————o————

Addison Payne, *et al.*, Respondents, *vs.* Edgar Stanton, Appellant.

1. *Voluntary conveyances—Effect as to subsequent creditors.*—As to creditors existing at the time of a voluntary conveyance, if its effect and operation be to hinder or defraud them, it may be held invalid; but the doctrine is well settled that such a conveyance, although the maker be at the time in debt, is not, as to subsequent creditors, fraudulent, without proof of actual or intentional fraud.

*Appeal from Sullivan Circuit Court.*

*Hyde & Christy, with Geo. W. Easley,* for Appellant.

I. To set aside a prior voluntary conveyance, a subsequent creditor must prove fraud in fact. (Read vs. Livingston, 3 Johns. Ch., 501; 2 Sto. Eq., §§ 355–366; Saxton vs. Wheaton, 8 Wheat., 229–30; Pepper vs. Carter, 11 Mo., 540; Vogler vs. Montgomery, 54 Mo., 577.)

*R. D. Morrison,* for Respondents.

It is not contended that the conveyance from George to Edgar Stanton is fraudulent *per se;* but it is contended that the evidence clearly shows that it was fraudulent as against his creditors and the plaintiff in this suit.

WAGNER, Judge, delivered the opinion of the court.

From the record it appears that in the year 1859, George Stanton, the father of the defendant herein, conveyed to the defendant the lands in controversy in this suit. The defendant was a minor at the time and the conveyance was voluntary. George Stanton at that time was about to start for California and he was indebted to one Jackson in about the sum of fifty dollars, which he subsequently paid. He returned from California in 1870 or 1871 and again became indebted to Jackson in a little upwards of one hundred dollars, and then left his family and went to Texas. On the last named indebtedness, Jackson obtained judgment; and the plaintiffs bought the land under execution issued thereon. George Stanton's wife and the defendant continued to reside on the land, and still reside on it. It is shown that at the time the conveyance was made in 1859, George Stanton had some personal property, and there was no evidence that the conveyance was made with any fraudulent intent, or any contemplated future indebtedness.

This suit was instituted to set aside the conveyance made to the defendant as fraudulent, and the court set the same aside, and the defendant appealed.

The doctrine is well settled that a voluntary conveyance by a person in debt, is not, as to subsequent creditors, fraudulent *per se*. To make it fraudulent, as to subsequent creditors, there must be proof of actual or intentional fraud. As to creditors existing at the time, if the effect and operation of the conveyance are to hinder or defraud them, it may as to them, be justly regarded as invalid, but no such reason can be urged in behalf of those who become creditors afterwards.

Judge Scott in Pepper vs. Carter, (11 Mo., 540) discusses this question and says: "The question as to what will render a voluntary conveyance void as to creditors under the statute (13 Eliz,) from which ours is borrowed, is one like the question of continuing in possession of property, after its sale, and like it has undergone much discussion, and it is the subject of contradictory opinions."

Some would make an indebtedness *per se*, evidence of fraud against existing creditors. Others would leave every conveyance of this kind to be judged by its own circumstances, and from them infer the existence or non-existence of fraud in each particular transaction. Without determining the question as to existing creditors, we may safely affirm that all the cases will warrant the opinion that a voluntary conveyance as to subsequent creditors, although the party be embarrassed at the time of its execution, is not fraudulent *per se* as to them ; but the question whether it is fraudulent or not, is to be determined by all the circumstances. I do not say that the fact of indebtedness is not to weigh in the consideration of the question of fraud in such cases ; but that it is not conclusive.

Chancellor Kent, who maintains the most rigid doctrines with regard to the effect of voluntary conveyances against creditors, after a full examination of the authorities, concedes "that actual fraud, or fraud in fact, must be proved in order to set aside a prior voluntary conveyance at the suit of subsequent creditors. It is needless to enter into an examination of the cases, to maintain this doctrine ; it has been done already, and by those whose capacity cannot be questioned." The learned judge then refers to Read vs. Livingston, 3 Johns. Ch., 501 ; 2 Story's Eq. Jur., §§ 355–366 ; Sexton vs. Wheaton, 8 Wheat., 229 ; and Ridgway vs. Underwood, 4 Wash. C. C., 137.

All the authorities are referred to by Hare & Wallace in their notes to Sexton vs. Wheaton (8 Wheat. 229) and Salmon vs. Barnett, (1 Conn., 525) in 1 Am. Lead. Cas., 49 ; and the rule above announced is universally established. There are no contradictory decisions in this court. The cases of Potter vs. McDowell, (31 Mo., 62,) and Potter vs. Stephens, (40 Mo., 229) were cases where the creditors existed at the time the voluntary conveyances were made.

When George Stanton, the father in the present case, made the voluntary conveyance, it does not appear that he owed anything except the fifty dollars. That debt he afterwards

paid off. As long as he did not contemplate defrauding any body, and his act would not have that effect, he had the unquestioned right to make whatever disposition he saw fit of his property.

The debt for which the conveyance is now sought to be set aside was contracted some eleven or twelve years after it was made. It is not probable that this was in the contemplation of the party when he made the deed. At all events, before the plaintiffs are entitled to their remedy, they must prove the actual existence of a fraudulent intention when the conveyance was executed. That they entirely failed to do.

Wherefore the judgment must be reversed, all the judges concurring.