FISHER v. LEWIS *et al., Plaintiffs in Error.*

69 625
45a 524
69 629
74a 423

1. **Execution Sale Pending Bankruptcy Proceedings.** A sale of the property of a bankrupt under execution ·upon a judgment rendered and levy made prior to the adjudication of bankruptcy, is valid.

2. **Former Judgment**: RELATION OF ASSIGNEE IN BANKRUPTCY TO SECURED CREDITOR. The judgment in a suit brought by an assignee in bankruptcy to set aside as fraudulent a deed made by the bankrupt, is not binding upon a creditor of the bankrupt who had reduced his demand to judgment and had thus acquired a lien prior to the adjudication of bankruptcy, and was not made a party to the assignee's suit. Such a creditor having an interest hostile to the interests of the general creditors, the assignee could not be considered to have represented him in the prosecution of the suit.

3. **A Conveyance held Fraudulent.** The conveyance in this case assailed for fraud was executed while the grantor was free from debt, but it was voluntary, and was one of several deeds of like character conveying all the grantor's property to his children made when he was on the eve of engaging in a hazardous business enterprise, and, as the court found, to secure him a retreat in the event of probable pecuniary disaster; *Held*, that as against a subsequent creditor it was fraudulent and void.

*Error to Osage Circuit Court.*—HON. A. J. SEAY, Judge.

*Lay & Belch* for plaintiffs in error.

*Mosby & Clements* and *J. L. Smith* for defendant in error.

HENRY, J.—This was a suit ·commenced by plaintiff in the Osage circuit court, to set aside a deed made by Edmond Lewis to his co-defendant, conveying a parcel of land in said county. Plaintiff obtained a judgment in a suit against Edmond Lewis and purchased said land under an execution issued on that judgment, and in his petition herein alleges that the conveyance by Edmond to James M. Lewis was made with intent to hinder, delay and defraud the creditors of said Edmond. There was a finding and judgment for plaintiff, and defendants have brought the case here on writ of error.

The judgment and the levy of the execution upon the land in controversy, were prior to the date at which Edmond Lewis was adjudged a bankrupt; but it is contended that the sale having occurred after Lewis was adjudged a bankrupt, was a nullity. The adjudications to the contrary are innumerable. *Seibel v. Simeon*, 62 Mo. 257; *Wilson v. City Bank*, 17 Wall. 473; *Mays v. Fritton*, 20 Wall. 414; *Biddle's Appeal*, 68 Pa. St. 13; *In Re Irwin Davis*, 1 Sawyer C. C. Rep. 260; *Hagan v. Lucas*, 10 Peters 400; *Johnson v. Bishop*, 1 Woolworth C. C. Rep. 325; *Peck v. Jenness*, 7 How. 612; *Pulliam v. Osborne*, 17 How. 471; *Buck v. Colbath*, 3 Wall. 341; *Mollison v. Eaton*, 16 Minn. 430; *Eyster v. Gaff*, 91 U. S. 524; *Thompson v. Moses*, 43 Ga. 385. In the case of *Eyster v. Gaff*, supra, Miller, J., observes that: "The opinion seems to have been quite prevalent in many quarters, at one time, that the moment a man is declared a bankrupt the district court which has so adjudged, draws to itself, by that act, not only all control of the bankrupt's property and credits, but that no one can litigate with the assignee contested rights in any other court, except so far as the circuit courts have concurrent jurisdiction, and that other courts can proceed no further in suits of which they had at the time full cognizance; and it was prevalent practice to bring any person, who contested with the assignee any matter growing out of disputed rights of property, or of contracts, into the bankrupt court by the service of a rule to show cause, and to dispose of their rights in a summary way. This court has steadily set its face against that view."

The judgment against the assignee in the suit instituted by him in the district court of the United States for the western district of Missouri, against these defendants, for the purpose of having the conveyance in question set aside for fraud, is not binding upon this plaintiff, who had acquired a lien upon, and, for aught that appears in this record, a title to the land before the suit by the assignee was instituted. The sale

*1. EXECUTION SALE PENDING BANKRUPTCY PROCEEDINGS.*

*2. FORMER JUDGMENT: assignee in bankruptcy: secured creditor.*

·by the sheriff to the plaintiff divested the title of the bankrupt, and the purchaser acquired a good title. 43 Ga. 383 and cases *supra*. The judgment in the suit of the assignee against Edmond Lewis and James M. Lewis, was rendered December 23rd, 1871, but when the suit was instituted does not appear, and we will not assume that it was before the plaintiff purchased the land at the execution sale. The execution sale occurred on the 3rd day of May, 1871. But whether the sale occurred before or after the commencement of the suit by the assignee, Fisher, by his judgment, had acquired a lien upon the land for the judgment debt, which was such an interest as made it necessary that he should be a party to any proceeding which was to affect his interest. It is contended that Fisher, as a creditor of Edmond Lewis, was represented in that suit by the assignee. As a general proposition it may be true that the assignee represents the creditors, but it cannot be maintained that he represents a creditor in a proceeding to take that creditor's property for the benefit of all the creditors. Fisher had a claim to this property hostile to that of the general creditors of the bankrupt, and was as necessary a party, if it was sought to bind his interest by the proceeding, as if the bankrupt's assignee had instituted a suit to recover as belonging to the bankrupt any species of property Fisher might have been in possession of, claiming to be the owner. Not having been a party to the suit instituted by the assignee, the judgment therein presents no obstacle to the prosecution of this suit.

On the issue of fact in regard to the fraudulent intent of Edmond Lewis in making the deed in question, the court

3. A CONVEYANCE HELD FRAUDULENT. below found for the plaintiff, and we think there was abundant evidence to warrant its finding. That he was not in debt when the deed was executed, may be conceded, but very soon after its execution he became involved, and his conduct and conversations, detailed in evidence, justify the conclusion that his conveyances to his children were made to secure him a retreat in

the event of a probable pecuniary disaster in a hazardous business in which he proposed to embark. He told a creditor of his partner, who offered him as surety on a note to the creditor, that he was good, and owned a farm, when he had conveyed that farm to his children. We do not overlook the fact that he testified that the farm he meant was a tract of land he had purchased for taxes. It was notorious that he had owned an improved farm to which he had a good title. He evidently intended the creditor to believe that it was this farm he had reference to. If he had informed the creditor that it was the land to which he had only a tax title, it is not likely that the former would have regarded the ownership of that property as giving much weight to his name as surety on the note. If he had this land in his mind, it was a fraud upon the creditor, who he had reason to believe supposed it was the other. And if he meant the home tract, he was guilty of fraud, because he had previously conveyed it to his children. Another circumstance tending strongly to show his purpose, was the remark he made to the constable who was levying upon goods to satisfy executions against Lewis and his partner, that "they can take all this. I fixed my matters before I left home so that I will have a home if I lose this." The nominal consideration for the conveyance to James M. Lewis was $10, and there is no evidence that even that paltry sum was ever paid, and if it was, it was so inadequate that James cannot be regarded as a purchaser for a valuable consideration.

Without detailing all the evidence in the case, we think it tended strongly to prove that Edmond Lewis, having determined to engage in a business which would probably require him to incur debts in its prosecution, conveyed his property to his children for the purpose of protecting it against the demands of any persons to whom he might become indebted in the course of that business. Besides, these debts were incurred so soon after the conveyances to his children, and under such circumstances, as even war-

ranted the court in finding that he had then determined to incur debts and take all the chances of making, with a feeling of assurance, that if unfortunate in his speculations he would still have that property to fall back upon. The judgment is affirmed. All concur.

AFFIRMED.