Loehr v. Murphy.

FREDERICK LOEHR, Appellant, v. JAMES MURPHY *et al.,* Respondents.

St. Louis Court of Appeals, May 19, 1891.

1. **Pleading:** CONSTRUCTION: ACTION TO SET ASIDE FRAUDULENT CONVEYANCE. Where a pleading is silent or ambiguous, it must be taken most strongly against the pleader; but this is not inconsistent with the rule, that pleadings must be fairly construed so as to reach the real intention of the pleader. *Held* under this rule, that this was an action by a subsequent creditor to set aside a transfer of his debtor's property on the ground that it had been made to defraud creditors, and that the petition was sufficient, and that it was not essential for the plaintiff to plead his evidence in detail.

2. ———: ACTION BY SUBSEQUENT CREDITOR TO SET ASIDE FRAUDULENT CONVEYANCE. In such an action the nearness or remoteness of the time of the contraction of the debt sued upon to the date of the conveyance, while important as an evidentiary fact, is not decisive, and the statement of it is, therefore, not essential to the statement of a good cause of action.

3. **Fraudulent Conveyances:** VOLUNTARY CONVEYANCE. *Held, arguendo,* that a voluntary conveyance is void as to existing creditors, regardless of intent, but that, as to subsequent creditors, it is void only when made with the intent to hinder, delay or defraud them.

*Appeal from the St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

REVERSED AND REMANDED.

*G. M. Stewart*, for appellant.

*David Murphy*, for respondents.

THOMPSON, J.—The question for decision upon this record is whether the court erred in sustaining a demurrer to the following petition :

"And now comes plaintiff, and by leave of court files his amended petition, and states that, on the sixth day of June, A. D. 1889, he recovered a judgment against the defendant, James F. Murphy, in the circuit court of the city of St. Louis, for the sum of $701.92, and $17.10 for his costs; that execution was duly issued on said judgment, returnable to the October term, 1889, of said court, and was returned *nulla bona*, and after such return plaintiff paid all of the costs of suit and execution, to-wit, the sum of $25, and the total of said judgment and costs now remain due and unpaid.

"'Plaintiff further states that, in the year 1881, plaintiff (said defendant) purchased and paid for the following described tract or parcel of land situated in city block number 1884, among others the following described piece or parcel of land situated in the city of St. Louis, state of Missouri, to-wit:   A lot of ground located as follows :   Beginning at the northwest corner junction of Easton and Sheridan avenues, and running thence one-half inche; thence westwardly at right angles with Sheridan avenue, one hundred and one feet and six inches to an alley; thence southwardly along said alley a distance of fifty-eight feet, two and one-half inches ; thence eastwardly to a point; thence southwardly a distance of fifty-five feet to the northern line of Easton avenue ; thence eastwardly along the north line of Easton avenue sixty-two feet, four and one-half inches, more or less, to the place of beginning.

"Said property is fully described in a deed of Sarah B. Curtis to James F. Murphy as trustee for his wife, Hannah Murphy, defendant herein, dated August 25, 1881, and recorded in the office of the recorder of deeds for the city of St. Louis in book 655, at page 521.

"Plaintiff further states that James F. Murphy paid for said property with his own money, and has, since the date of said purchase, placed improvements on the same at his own expense, and paid for the same with his own money, of the value of about $10,000.

"That all of said property, although the title to the same was placed in the name of his wife, Hannah Murphy, is owned and controlled by defendant, James F. Murphy, and he now has and enjoys the use and usufruct thereof, but the title to the same was placed in the name of himself as trustee of his wife, Hannah Murphy, for the purpose of secreting the same, and also for the purpose of hindering, delaying and defrauding his then and future creditors, and the same so remains for said purposes, and by the terms of said deed there is a contingent remainder in said James F. Murphy.

"Plaintiff further states that the said conveyance was made by the said James F. Murphy to the trustee for the use and benefit of his wife, Hannah Murphy, without any valuable consideration moving to him, but for the sole purpose of defeating his creditors then existing, and those who might subsequently become such, and especially this plaintiff, and such was the purpose and intention of the said James F. Murphy when he caused the improvements to be placed on said property, which was done when the said James F. Murphy was wholly insolvent.

"Plaintiff avers that said property is held by the said James F. Murphy as trustee for his wife, Hannah Murphy, to enable him to defraud the creditors of the latter, and prevent the collection of their just demands from him out of the same, while, in truth, the said

property belongs to the said James F. Murphy, and in equity and good conscience should be subject to the payment of plaintiff's judgment.

"Plaintiff further states that the defendant, James F. Murphy, has no property held or owned by him in his own name, subject to execution, or wherewith plaintiff's judgment can be satisfied.

"Plaintiff further states that the Mound City Building & Loan Association, defendant herein, has several deeds of trust, or mortgages, on said property, upon which there now remains due about the sum of $200, and which were placed on said property in 1884, 1886 and 1889.

"Plaintiff, therefore, prays that the amount due said Mound City Building & Loan Association be ascertained, and that the remainder of said property be subjected to the payment of plaintiff's said judgment and costs, and, if the same be not paid within a time to be limited by this court, that said property be sold by the sheriff of the city of St. Louis at public vendue, and out of the proceeds of said sale the debt of the Mound City Building & Loan Association be first paid, the homestead rights, if any, be ascertained and set apart to the party entitled thereto, and out of the said residue plaintiff's debt and demand be paid in full, together with the costs of this case, and the remainder to the parties entitled thereto, and for other and further relief."

A majority of the court are of opinion that this petition states a good cause of action, and that the court erred in sustaining the demurrer to it. We fully concede the rule of pleading that, where an action is predicated upon the ground of fraud, the pleader must state facts from which the legal conclusion of fraud can be drawn; but we think that this petition does state such facts. An analysis of its averments will make it appear that it charges: *First.* That in the year 1881, the defendant, James F. Murphy, being insolvent, vested in himself as trustee for his wife, Hannah Murphy, a

certain described piece of property. *Second.* That he did this for the purpose of concealing it. *Third.* That he did it for the purpose of hindering, delaying and defrauding his then and future creditors. *Fourth.* That it so remained for said purposes. *Fifth.* That by the terms of the deed there is a contingent remainder in the defendant, James F. Murphy. *Sixth.* That the defendant, James F. Murphy, had paid for the property with his own money. *Seventh.* That since the date of the conveyance he has placed improvements on the same at his own expense, and paid for the same with his own money, to the value of about $10,000. *Eighth.* That the conveyance was made without any valuable consideration moving to the defendant, James F. Murphy. *Ninth.* That it was made for the purpose of defeating his creditors then existing. *Tenth.* That it was also made for the purpose of defeating those of his creditors who might subsequently become such, and especially this plaintiff. *Eleventh.* That such was the purpose and intention of James F. Murphy when he caused these improvements to be placed upon the property. *Twelfth.* That these improvements were placed upon the property when he was wholly insolvent. *Thirteenth.* That the property was thus vested by James F. Murphy in his wife, to enable him to defraud his creditors, and to prevent the collection of their just demands from him out of the property. *Fourteenth.* That, in truth, the property belongs to the said James F. Murphy. *Fifteenth.* That the defendant, James F. Murphy, has no property held or owned by him in his own name, subject to execution, or wherewith the plaintiff's judgment can be satisfied. *Sixteenth.* That plaintiff recovered a judgment against said James F. Murphy at the October term, 1889, of the circuit court of the city of St. Louis, and that an execution thereon has been returned *nulla bona.*

Where a pleading is silent or ambiguous, it must be taken most strongly against the pleader. This is not

inconsistent with the rule that the pleadings must be fairly construed, so as to reach the real intention of the pleader. So construing this pleading, it must be taken that the judgment upon which the plaintiff predicates this suit in equity was for a debt recovered *subsequently* to the conveyance which the plaintiff seeks to set aside. As the date at which the debt was contracted is not given, we also assume that it was contracted at the latest reasonable date prior to the rendition of the plaintiff's judgment,—that is to say, probably in the year 1888.

But, taking everything in the petition which is thus indefinitely stated against the pleader, we remain of opinion that it states a good cause of action; and with the exception of this single point of indefiniteness, we are unable to see how it could be better drawn, unless to avoid some repetition. "The law in regard to voluntary conveyances is very simple. A conveyance made without consideration is void as to existing creditors, regardless of intent; as to subsequent creditors, it is void only when made with intent to hinder, delay or defraud them." *Boatmen's Savings Bank v. Overall*, 16 Mo. App. 510; s. c., affirmed on this opinion, 90 Mo. 410; *Payne v. Stanton*, 59 Mo. 158; *Hurley v. Taylor*, 78 Mo. 238; *Fisher v. Lewis*, 69 Mo. 629.

The cases which uphold settlements voluntarily made by husbands upon their wives, or advancements by parents to their children, as against future creditors, are generally cases where it appeared that, at the time of such settlement or advancement, the settler or donor was not indebted beyond the current bills which every householder may be supposed to owe, or not indebted beyond ample means of payment, and where the circumstances were such that it could not be said that the settlement or advancement was not a just and reasonable provision for the wife or the child. Such was the leading case of *Sexton v. Wheaton*, 8 Wheat. 229, where the English authorities on the question were reviewed by Chief Justice MARSHALL. Such, also, was the case

of *Mattingly v. Nye*, 8 Wall. 370.   Other more or less
similar illustrative cases where the conveyance was
upheld are *Mittelburg v. Harrison*, 11 Mo. App. 136;
s. c., affirmed on the opinion of this court, 90 Mo. 444;
*Payne v. Stanton*, 59 Mo. 158; *Pepper v. Carter*, 11
Mo. 540.   On the other hand, illustrations of the state
of facts on which such conveyances have been declared
void as to subsequent creditors will be found in two
cases decided by the supreme court of this state.   In
the former of these cases ( *Howe v. Waysman*, 12 Mo.
169 ), a father in failing circumstances purchased cer-
tain slaves with his own money, and had the bill of sale
made to his minor children.   It was held that the title
so vested did not pass the property to them as against
subsequent purchasers from him, nor as against subse-
quent creditors.   The question was ably reviewed by
Judge Scott, and the statutes of thirteenth and twenty-
seventh Elizabeth were held to be merely declaratory
of the common law ; and such is the general doctrine.
The second case is that of *Fisher v. Lewis*, 69 Mo. 629,
where the conveyance which was assailed for fraud was
a conveyance of land executed at a time when the
grantor was free from debt.   But it was voluntary con-
veyance, and was one of several deeds of like character
conveying all the grantor's property to his children,
and was made when he was on the eve of engaging in a
hazardous business enterprise, and, as the court found,
was made with the intent to secure for him a retreat in
the event of probable pecuniary disaster.   It was held
that this conveyance was void as to a subsequent cred-
itor.   Giving the opinion of the court, Judge Henry
said :   "That he was not in debt when the deed was
executed may be conceded ; but very soon after its exe-
cution he became involved, and his conduct and conver-
sation, detailed in evidence, justified the conclusion
that his conveyances to his children were made to
secure him a retreat in the event of a probable pecun-
iary disaster in a hazardous business in which he

proposed to embark.  *  *  *  Without detailing all the evidence in the case, we think it tended strongly to prove that Edmund Lewis, having determined to engage in a business which would probably require him to incur debts in its prosecution, conveyed his property to his children for the purpose of protecting it against the demands of any persons to whom he might become indebted in the course of that business. Besides, these debts were incurred so soon after the conveyance to his children, and under circumstances, as even warranted the court in finding that he had then determined to incur debts and take all the chances of making, with a feeling of assurance, that, if unfortunate in his speculation, he would still have that property to fall back upon."

All the essential or constitutive facts, upon which the court in these last two cases held the conveyances void, seem to be alleged in this petition. We do not see what more the pleader could allege in order to bring this case within the principles of these cases, than he has alleged, unless we should require him to plead his evidence in detail. The pleading of evidence is contrary to sound principles. Where this is permitted there is great difficulty in forming an issue, and interminable amendments are required on the trial to prevent variances between the pleadings and the evidence. This petition seems to be indefinite, as already said, in failing to state the *date* at which the plaintiff's indebtedness was contracted, in respect of which he procured his judgment against the defendant, James F. Murphy, but this is only an evidentiary fact. It is not a constitutive or decisive fact. In the leading case of *Sexton v. Wheaton*, 8 Wheat. ( U. S.) 229, 250, it was conceded by Chief Justice MARSHALL that the fact that the indebtedness to the plaintiff had been contracted shortly after the conveyance, which was assailed, was an evidentiary fact, to be taken into consideration upon the question of fraudulent intent ; but it was held, under

the circumstances of that case, that the fact was not in itself evidence of a fraudulent intent,—in other words it was not a controlling or decisive fact. On the other hand, in *Fisher v. Lewis*, 69 Mo. 629, above quoted, the court lays stress upon the fact that the indebtedness to the plaintiff was incurred soon after the making of the conveyance which was assailed, holding that this fact, under the circumstances, warranted the court in reaching the conclusion of a fraudulent intent in making the conveyance. These cases simply show that the proximity of the contracting of the plaintiff's indebtedness to the time of the making of the conveyance is an evidentiary fact, which has a very important bearing in the conclusion of the chancellor. It may be conceded that the lapse of a long period of time between the making of the conveyance and the contracting of the indebtedness would weaken the inference of a fraudulent intent; but, whether it would be decisive against the inference or not, would depend upon the other circumstances of the case. Cases could be imagined and are shown by the judicial reports, where a debtor has persisted for a series of years in concealing and covering up his property, while incurring debts and holding his creditors at arm's length. The nearness or remoteness in point of time of the contracting of the indebtedness to the conveyance which is assailed is, therefore, not a decisive fact one way or the other, and is, hence, not a constitutive fact which the pleader is obliged to allege in order to state a cause of action.

There are some cases where the rules of pleading do not require even the constitutive or ultimate facts to be pleaded, but where the pleader merely states the conclusion of law upon which his right of relief rests. Such are the possessory actions of replevin and ejectment, where he merely states that he is entitled to the possession of a certain chattel or of a certain piece of land, which the defendant unjustly detains from him.

There are undoubtedly other cases where the law proceeds so far in the opposite direction as, for greater certainty, to require the pleading of what may be called evidentiary facts. But the general rule lies between these two extremes. Under this rule the pleading sustains a two-fold office : *First*. To advise the opposite party of the state of the case which he is called upon to meet. *Second*. To state a collection of constitutive facts upon which the plaintiff, as a legal conclusion, is entitled to relief to the end that, if those facts are deemed insufficient in law by the defendant, he may challenge them by a demurrer, and thus possibly avoid the expense and vexation of a trial. The petition in the present case seems to a majority of the court to subserve both of these ends. The judges, who concur in this opinion, have been unable to bring their minds to any substantial doubt upon the question.

The judgment will be reversed, and the cause remanded. It is so ordered. Judge ROMBAUER concurs. Judge BIGGS concurs in the result.