## SCHARFF et al. v. McGAUGH, Appellant.

### Division Two, July 1, 1907.

1. **CONSTABLE'S RETURN: Nulla Bona.** A constable's return, "Executed the within writ in the county of Stoddard, State of Missouri, on the second day of May, 1903, no property found to levy this execution," is sufficient return of *nulla bona*.

2. ————: **Counting Time.** To ascertain the date an execution made returnable in ninety days is returnable, exclude the day of its issue and beginning with the next day count ninety days, and the ninetieth day is the date it is due.

3. ————: **Nulla Bona: Transcript: Execution in Vacation.** Where the judgment was rendered in the justice's court on January 31, and execution returnable in ninety days was issued on February 1, and a transcript of the judgment was filed in the circuit clerk's office on February 2, and the constable made a *nulla bona* return on May 2, and thereafter a certified copy of that execution and return were filed in the circuit clerk's office, an execution thereafter issued by the circuit clerk in vacation was valid, and it was not necessary to its validity that it be issued in pursuance to an application to the court in term time. The clerk has the same authority to issue executions upon such transcript judgments that he has to issue executions on judgments rendered in the circuit court.

4. ————: ————: ————: **Words "Sued Out."** The words, "no execution shall be sued out of the court where the transcript is filed," found in the statute refering to the issuance of executions on the filing with the circuit court of transcripts of judgments rendered by justices of the peace, do not mean that the court must determine the plaintiff's right to the execution before it can issue, nor do they mean that the clerk cannot in vacation issue execution on such transcript judgment.

5. **Exclusion of Evidence: Ruling Reserved.** Where appellant offered depositions in evidence and respondent interposed objections touching their competency and the court heard the depositions and reserved its rulings on the objections, and the record discloses no affirmative ruling excluding them, the presumption, if any is to be indulged, is that the court admitted the depositions.

6. **DEPOSITIONS: Lost Return: Shown by Docket.** Whether or not depositions showing the return on the justice's execution, which had been lost, were or were not competent, will not be determined where the same facts referred to and embraced in them were shown by the original and certified copy of the justice's docket.

7. **EJECTMENT: Estoppel: Attachment: Dismissal.** Where plaintiff brought suit by attachment in the magistrate's court, charging that defendant had fraudulently disposed of his land for the purpose of delaying his creditors, and at the trial dismissed the attachment upon condition that defendant confess judgment for the debt, and that was done, the question of the fraudulent disposition of his property was not thereby litigated, and plaintiff is not estopped from assailing the deed then charged to have been fraudulently made.

8. ————: **Innocent Purchaser: Not Party.** Whether or not a certain person, shown to be the owner of the land by conveyances emanating from the wife of the judgment debtor, who had conveyed to her, as charged, for the purpose of defeating plaintiff and other creditors, was an innocent purchaser, is not for consideration, if such person is not a party to the ejectment suit and made no application to be made a party.

9. ————: ————: **Outstanding Dower.** An outstanding dower in the widow of the judgment debtor who fraudulently conveyed the property to his wife, who conveyed it to a person not made a party to the suit, cannot be litigated in an ejectment brought against one who was in actual possession at the time the suit was brought.

10. **FRAUDULENT CONVEYANCE: Voluntary Deed to Wife.** A voluntary deed to a wife, for instance, one which recites a consideration of one dollar, although executed without any fraudulent intent, is void as to existing creditors, especially when about the time the voluntary deed in controversy was made, the debtor deprived himself of all the land he owned in the county by conveying it to his stepfather. And under such circumstances it is for the trial court to determine whether or not the voluntary deed to the wife was made in satisfaction of a debt which the grantor owed her mother.

Appeal from Madison Circuit Court.—*Hon. Robert A. Anthony,* Judge.

AFFIRMED.

*George Houck, H. S. Shaw* and *W. E. Edmonds* for appellant.

(1) If the defendant is a resident of the county the clerk has no authority to issue an execution, on a transcript judgment from a justice of the peace, but the same must be sued out of the court in which the transcript is filed. R. S. 1899, sec. 4019; Rollins v. McIntire, 87 Mo. 509; Freeman's Void Judicial Sales, sec. 23. (a) On a motion for an execution in the circuit court, the latter court would require the plaintiff in the execution to give notice to the defendant in the execution, and the judgment of the court on the motion would be an adjudication of the constable's return on the justice's execution. 11 Am. and Eng. Ency. Law (2 Ed.), 614, 615; 8 Ency. Pl. and Pr., 379; Paxon v. Talmage, 87 Mo. 13. (b) This court has never decided that an execution on a transcript judgment could be sued out of the clerk's office. United States v. Cannon, 116 U. S. 55. (2) The court committed error in ruling out the depositions of Mrs. Ashworth and Mrs. Summers because they had no interest in the event of the suit. Jenkins v. Emmons, 94 S. W. 812; R. S. 1899, sec. 4652; 3 Blackstone's Com. (4 Ed.), star p. 370; 1 Greenleaf, Ev., sec. 390; Storm v. Smith, 81 S. W. 1219; Fort v. Donnell, 40 Mo. App. 63; Banks v. Hunt, 25 Mo. App. 170; Cleveland v. Coulson, 78 S. W. 1105; Clark v. Thias, 173 Mo. 645; Leech v. McFadden, 110 Mo. 589; Meris v. Thremin, 90 Mo. 442. It was competent to show by parol testimony what the consideration of the deed was from G. L. Edwards to M. A. Edwards. Edwards v. Latimer, 82 S. W. 113. (3) The con-

stable's execution was returned in less than ninety days after it was issued, and, for that reason, no execution could be sued out of the circuit court. Reed v. Lowe, 163 Mo. 519. (4) By compromising their suit before the justice of the peace and by dismissing their charge of fraud against Edwards, plaintiffs are estopped from assailing the deed from G. L. Edwards to M. A. Edwards, as a fraudulent deed. Morrison v. Turnbaugh, 79 S. W. 1002; Thompson v. Cohen, 127 Mo. 215; Clough v. Holden, 115 Mo. 358; 6 Am. and Eng. Ency. Law (2 Ed.), 418-714. (5) The defendant is an innocent purchaser for value, and without notice that M. A. Edwards was the wife of G. L. Edwards, and without notice of the pendency of the equity suit wherein L. and A. Scharff were plaintiffs and G. L. Edwards et al., were defendants. Jacobs v. Smith, 89 Mo. 684; Carr v. Cates, 96 Mo. 271; 21 Am. and Eng. Ency. Law (2 Ed.), 312, 621, 622; Pife v. Jordan, 55 Am. St. 138; Hammond v. Paxon, 58 Mich. 393; Wortham v. Boyd, 66 Tex. 401; Macklin v. Allenbery, 100 Mo. 337; Johnson v. Co., 148 U. S. 360; Bedford v. Co., 110 U. S. 174; Pierce v. Stevde, 11 Mo. App. 364; Bonny v. Taylor, 9 Mo. 63; 24 Am. and Eng. Ency. Law (2 Ed.), 119, 150; Lindell v. Lindell, 133 Mo. 386; 23 Am. and Eng. Ency. Law (2 Ed.), 478, 524; Thompson v. Woolridge, 102 Mo. 505; Young v. Schofield, 132 Mo. 660. The record of the deed from G. L. Edwards to M. A. Edwards was not constructive notice of the relationship between grantor and grantee. 21 Am. and Eng. Ency. Law (2 Ed.), 312; Crawford v. Slye, 4 Cranch 457; LaMotte v. Archer, 4 E. D. Smith 46; Williams v. Butterfield, 77 S. W. 729. (6) The dower of Mrs. Ashworth in the land of G. L. Edwards, her former husband, was never subject to the claim of his creditors, and therefore Mrs. Ashworth could not commit a fraud against those creditors with respect to

that interest; hence, if the deed from G. L. Edwards to M. A. Edwards was fraudulent as against the creditors of G. L. Edwards, the dower interest of the grantee still remained. Bealy v. Blake, 153 Mo. 672; Long v. Co., 107 Mo. 304; Davis v. Green, 102 Mo. 181; R. S. 1899, sec. 2946; Needles v. Ford, 167 Mo. 495. An ejectment will not lie against the widow by the heir or his alienee to recover possession of the land of which the husband died seized until the dower is assigned. Robertson v. Miller, 1 B. Mon. (Ky.) 92; 7 Ency. Pl. and Pr., 284, note 1; Curley v. Kinley, 66 Pa. St. 270. Where a dower right exists in several different parcels of land, and each parcel is held by a different owner, then the dower should be assigned in each part separtely. Thomas v. Hesse, 34 Mo. 13; Cozier v. Hinchy, 143 Mo. 209.

*Wilson Cramer* for respondents.

(1) No order of court is necessary for the issuing of an execution out of the circuit clerk's office as contended by appellant. The clerk is authorized to issue upon a certified copy of the justice's docket showing the issuance of an execution and a return *nulla bona* by the constable, or upon a certified copy of the execution and return. Ruby v. Railroad, 39 Mo. 480; Johnson v. Latta, 84 Mo. 139. (2) Aside from the question of fraud in its execution, the deed from G. L. Edwards to M. A. Edwards, his wife, which is relied upon by the defendant, conveys no title to the lots in suit. 1. Because the premises conveyed are described as lots 10, 11 and 12 in the village of Bernie, without giving the block number, which is an essential part of the description. 2. Because a conveyance from a husband to his wife does not pass the legal title. Turner v. Shaw, 96 Mo. 22; Crawford v. Whitmore, 120 Mo. 149; Stark v. Kirchgraber, 186 Mo. 642. (3) The deed from G. L. Edwards to his wife, M. A. Edwards, is a

voluntary conveyance and therefore fraudulent and void as against plaintiffs, who were existing creditors of G. L. Edwards at the time of its execution. In addition to the fact that this deed recites a consideration of one dollar, the evidence shows that G. L. Edwards, about the same time, conveyed his farm to his stepfather, George Newton, and by these transfers had divested himself of every foot of land he owned in the county. (4) Appellant asserts: ''The plaintiffs are estopped from assailing the deed from G. L. Edwards to M. A. Edwards for fraud,'' and contends that this result follows from the act of the plaintiffs in dismissing their attachment before the justice. But how could the attachment before the justice affect the real estate of G. L. Edwards? Could the question of a fraudulent disposition of it have been litigated in the justice's court in any manner whatever? If not, how can the dismissal of the attachment suit operate as an estoppel?

FOX, P. J.—This cause is here by appeal from a judgment of the circuit court of Madison county, Missouri, in favor of the plaintiffs. This is an action of ejectment, brought originally in the circuit court of Stoddard county, to recover lots 10, 11 and 12 in block 16 of the town of Bernie. The venue of said cause was changed to the circuit court of Madison county. The petition is in the usual form and the answer of the defendant was simply a general denial. Both parties to this proceeding claim title to the land in controversy under G. L. Edwards as the common source of title. Plaintiffs claim by virtue of a sheriff's deed under an execution against G. L. Edwards, and defendant through a direct conveyance made by G. L. Edwards to his wife, M. A. Edwards, on December 26, 1892.

The testimony on the part of the plaintiffs shows that G. L. Edwards acquired title to the premises in

dispute by deed from George Newton, dated November 5, 1892, and recorded November 28, 1892. That a short time before this deed was executed, in the month of September, 1892, G. L. Edwards became indebted to plaintiffs in the sum of $162.40, for which amount they subsequently obtained a judgment before a justice of the peace. The deed from Newton to G. L. Edwards was introduced in evidence by the plaintiffs, evidently for the purpose of showing that the debt of plaintiffs against Edwards accrued before he acquired title to the premises, and for the purpose of precluding any claim of homestead in the premises in controversy. On the 19th day of January, 1893, plaintiffs brought suit on their account against G. L. Edwards before J. R. Wilson, a justice of the peace of Liberty township, in Stoddard county, and recovered judgment on January 31, 1893, for $162.40, the full amount of their claim. An execution was issued February 1, 1893, directed to the constable of Liberty township, the township in which the defendant resided, returnable in ninety days. On the 2d day of May, 1893, the execution was returned with the following return endorsed: "Executed the within writ in the county of Stoddard, State of Missouri, on the 2d day of May, 1893, no property found to levy this execution. A. H. Welborn, constable."

On February 2, 1893, a transcript of the justice's judgment was filed in the circuit clerk's office of Stoddard county. After the execution issued by the justice had been returned, the attorney for plaintiffs filed in the office of the circuit clerk a certified copy of the execution with the constable's return, and caused an execution to be issued by the circuit clerk. Under this execution, which was dated August 19, 1893, the sheriff levied upon and sold the premises in controversy and plaintiffs became the purchasers, receiving the deed under which they claim. Shortly after acquiring title

to the lots, and after he had become indebted to plaintiffs, G. L. Edwards, as stated, made the conveyance to his wife, M. A. Edwards, conveying "all of lots Nos. 10, 11 and 12 in the village of Bernie, county of Stoddard and State of Missouri," and this deeds forms the basis of defendant's claim. The deed from G. L. Edwards to his wife, M. A. Edwards, simply recites a consideration of one dollar. There was other evidence introduced by plaintiffs tending to show that G. L. Edwards, about the same time that he conveyed the property in dispute to his wife, conveyed the farm upon which he was living to his stepfather, George Newton, and by this transfer had divested himself of all the land that he owned in Stoddard county.

On the part of the defendant the deed from G. L. Edwards to M. A. Edwards, conveying all of lots Nos. 10, 11 and 12 in the village of Bernie, county of Stoddard and State of Missouri, was offered in evidence. To this deed plaintiffs interposed objections: "First, because it purported to convey lots 10, 11 and 12 in the village of Bernie, while the premises sued for are described as lots 10, 11 and 12 in block 16 of the town of Bernie; second, because being a direct conveyance from husband to wife, it conveyed no legal title and constituted no defense to the action of ejectment, the answer being simply a general denial."

The court, upon these objections, simply announced that it would for the present admit the deed. In addition to the foregoing deed defendant offered the following conveyances in evidence:

A quitclaim deed from M. A. Edwards to J. L. Fort and J. B. Buck, dated January 4, 1897.

A quitclaim deed from J. B. Buck to George Houck, dated August 5, 1899.

A warranty deed from J. L. Fort and George Houck to W. M. McGaugh dated August 15, 1899.

A deed of trust from William McGaugh to S. P.

Jeffers as trustee for J. L. Fort and George Houck, dated August 19, 1899.

A trustee's deed from S. P. Jeffers to George Houck, dated August 2, 1900.

A warranty deed from George Houck to W. E. Edmonds and M. C. Doom, dated October 25, 1900.

A quitclaim deed from M. C. Doom to W. E. Edmonds, dated June 25, 1902.

There was other testimony offered by the defendant tending to show that the suit by plaintiffs against G. L. Edwards, in which a recovery of judgment for $162.40 was had, was an attachment proceeding, and that one of the grounds alleged in the affidavit for the writ of attachment was that G. L. Edwards had fraudulently conveyed and assigned his property and effects so as to hinder and delay his creditors, and that when that suit came on for trial before the justice it was compromised by plaintiffs dismissing the attachment upon condition that G. L. Edwards would consent to the entry of judgment against him for $162.40. The depositions of Mrs. Summers and Mrs. M. A. Ashworth were offered in evidence, which tended to prove that G. L. Edwards was indebted to Mrs. Summers and that she bought the premises in suit from G. L. Edwards in satisfaction of that indebtedness and directed him to make the deed to her daughter, M. A. Edwards. There was other testimony that in the year 1893 plaintiffs brought a suit in equity against G. L. Edwards and M. A. Edwards to set aside the deed from G. L. Edwards to M. A. Edwards, as a cloud upon their title. That suit was dismissed in the year 1900.

This cause was submitted to the court and the finding and judgment was for the plaintiff. A timely motion for new trial was filed and by the court overruled, and the defendant in due time and proper form prosecuted his appeal from the judgment rendered in this

cause and the record is now before us for consideration.

OPINION.

The record in this cause discloses the assignment of numerous errors as grounds for the reversal of this judgment. We will give to the complaints of appellant such atention and consideration as we deem their importance requires.

I.

It is insisted by learned counsel for appellant that there was no sufficient return of *nulla bona* upon the execution issued by the justice of the peace which would authorize the issuance of the exeution from the circuit court. The return endorsed upon the execution was as follows:

"Executed the within writ in the county of Stoddard, State of Missouri, on the 2d day of May, 1893, no property found to levy this execution. A. H. Welborn, constable."

In Ables v. Webb, 186 Mo. 233, the question of the sufficiency of the constable's return of *nulla bona* was in judgment before this court. The return in that case recited: "By returning this writ no other property found upon which to levy this writ." In discussing this proposition it was there said by this court: "These constable returns must not be weighed as with a goldsmith's scales, or viewed under a too powerful judicial microscope, or construed with sour and overnice precision and narrowness. The courts should hold up to them the candle of common sense and interpret them with blandness and liberality to support titles long acquiesced in. If such returns comply with the spirit of the statute and are substantially in form, they are well enough. [Franse v. Owens, 25 Mo. 329; Ruby v. Railroad, 39 Mo. 480; Littlefield v. Ramsey,

205 Sup—23

181 Mo. 613; State ex rel. v. Still, 11 Mo. App. 1. c. 285.] The return in this case: 'and by returning this writ no other property found upon which to levy the writ,' is practically a return of *nulla bona* (the word 'other' referring to the garnishment and being without a significance under this record), and the return, judged of by its four corners, showing with reasonable certainty there was no property found whereof to levy the writ."

It will be observed in that case that the case of Littlefield v. Ramsey, 181 Mo. 613, is cited approvingly, wherein it was held by this court, speaking through BURGESS, J., that a *nulla bona* return reciting "no property subject to execution has been found" was sufficient. Measured by the rules announced in these recent and well-considered cases, we see no escape from the conclusion that the return in the case at bar was a substantial compliance with the statute.

## II.

It is next insisted that the constable's execution was returned in less than ninety days after it was issued, and for that reason no execution could be sued out of the circuit court. The facts as disclosed by the record do not support this contention. The record discloses that the execution was issued on the 1st day of February, 1893, and directed to the constable of Liberty township, Stoddard county, Missouri, and made returnable in ninety days. It only requires a simple calculation to demonstrate that this execution was returned at the proper time. Excluding the date of the issue, there were twenty-seven days in February, thirty-one in March, thirty in April and two in May, which makes ninety days.

## III.

It appearing that a proper certificate of a *nulla bona* return by the constable upon this execution was

filed in the office of the circuit clerk wherein the transcript of the justice's judgment had been previously filed, we are brought to the consideration of the earnest insistence on the part of counsel for appellant that the execution issued in this case was without authority, for the reason that no execution is authorized to be issued under the provisions of the statute by the clerk in vacation, and that it is essential to the validity of an execution upon a transcript judgment that the execution be sued out by some sort of an application to the court in term time. We are unable to give our assent to this insistence.

Section 4018, Revised Statutes 1899, provides for the filing of the transcript of judgments rendered by justices of the peace. Section 4019 provides that, "every such judgment, from the time of filing the transcript, shall have the same lien on the real estate of the defendant in the county as is given to judgments of circuit courts, and shall be under the control of the court where the transcript is filed; may be revived and carried into effct in the same manner and with like effect as judgments of circuit courts, and executions issued thereon may be directed to and executed in any county in this State; but no execution shall be sued out of the court where the transcript is filed, if the defendant is a resident of the county, until an execution shall have been issued by the justice, directed to the constable of the township in which the defendant resides, if there be one in such township, and, if not, to any constable in the county, and returned that the defendant had no goods or chattels whereof to levy the same." We are of the opinion that under the provisions of this statute when the transcript of the judgment of the justice of the peace is filed in the office of the circuit clerk such judgment is carried into effect

in the same manner and with like effect as judgments
of the circuit courts, and the plaintiffs in this case had
the right to make application to the clerk in vacation
and the clerk was authorized to issue the execution
in this cause.    The statute expressly provides that the
execution of such judgment shall be carried into effect
in the same manner and with like effect as judgments
of the circuit court, and executions issued thereon may
be directed to and executed in any county in this State.
The proviso in that section that no execution shall be
sued out of the court where a transcript is filed when
the defendant is a resident of the county until there has
been a return of *nulla bona* upon the execution issued
by the justice, is by no means a limitation upon the
authority of the clerk to issue the execution upon such
judgment.    The only difference being that where the
defendant is a resident of the county, then he is not
authorized to issue the execution until there is evidence
filed in the office of the clerk showing a return of *nulla
bona* upon the execution issued by the justice.    He has
the same power and authority to issue executions upon
transcript judgments which are duly filed in the circuit
court as he has to issue executions upon judgments ren-
dered by the circuit court itself.    Learned counsel for
appellant very earnestly and ably argue that the lan-
guage employed in the statute as to suing out of the
court where the transcript is filed, is to be treated as
requiring some method of proceeding before the court
in term time in order to secure an execution upon a
transcript judgment, where the defendant is a resident
of the county.    We are unable to attach to the use of
those terms the significance that is so earnestly urged
by appellant.    When the transcript of the judgment
before the justice of the peace is filed in the office of
the circuit clerk, it in effect is a judgment resting in
the circuit court and we are unwilling to give the terms

"sued out of the circuit court" that construction which
would require any different method of procuring the
issuance of an execution upon a judgment of that
character to those where the judgment is originally
rendered in the circuit court. The authority of the clerk
in vacation to issue executions upon transcript judg-
ments from the justice of the peace filed in the office
of the circuit clerk has been universally recog-
nized by both the bench and bar of this State.
In discussing this question in the case of Ruby
v. Railroad, this authority was fully recognized.
This court said: "The statute requires that an
execution shall be issued by the justice when
the defendant resides in the county, and be duly re-
turned by the constable that he can find no goods or
chattels of the defendant whereof to make the amount,
before resort can be had to process on the transcript.
But no provision has been made defining what shall be
evidence that the execution has been issued and the
return made when the transcript is filed antecedent
to these proceedings. Doubtless the most satisfactory
evidence would be a regularly certified copy of the ex-
ecution and the return thereon; but we cannot say that
the law absolutely requires this. When the justice cer-
tifies the facts, his certificate must be regarded as at
least prima-facie evidence and will fully justify the
clerk in issuing an execution on the transcript. It
will not conclude the adverse party, and he may show,
on motion to quash, any defect or irregularity in the
justice's process, or the return of the constable; but
till some evidence is introduced tending to impugn the
acts of the justice or constable, or to falsify the cer-
tificate, the execution should be deemed valid."

In Jordan v. Surghnor, 107 Mo. l. c. 524, Judge
MACFARLANE, speaking for this court, thus treated this
proposition. He said: "We do not think the objec-
tion raised to the sheriff's deed can be sustained upon

either ground urged against it. It was not necessary
to introduce in evidence either the transcript or the
judgment of the justice, before the deed from the sher-
iff was properly admissible. A transcript, from the
date of its filing in the office of the clerk, becomes
equivalent to a judgment of the circuit court for many
purposes, and executions issued thereon have the
same force and effect as though issued upon a judg-
ment rendered in said court. [R. S. 1879, sec. 2999.]
A sheriff's deed under execution is required to recite
the names of the parties to the execution, the date
when issued, the date of the judgment and other par-
ticulars as recited in the execution, and is made prima-
facie evidence of the truth of its recitals. This deed
recited the date of the judgment of the justice, as
also the date of filing the transcript. These recitals
were themselves evidence of the rendition of the judg-
ment and the filing of the transcript, and the burden
was placed upon the defendants to overcome them.
[R. S. 1879, sec. 2392; McCormick v. Fitzmorris, 39
Mo. 25; Carpenter v. King, 42 Mo. 221; Sachse v. Cling-
ingsmith, 97 Mo. 408.]

"II. The other objection to the deed was equally
untenable. If a defendant in a judgment of a justice
is not a resident of the county in which it is rendered,
then the prior issuance of an execution by the justice
is not a condition precedent to issuing one by the clerk
of the court in which the transcript is filed."

This contention must be ruled adversely to the
appellant.

## IV.

It is next insisted that the court erred in exclud-
ing the depositions of Mrs. Ashworth and Mrs. Sum-
mers. Upon this assignment of error it is manifest
that appellant has overlooked the disclosures of the
record as to the action of the court upon the depositions

of these two witnesses. There is an entire absence from this record of any ruling of the court excluding these depositions. The record shows that the trial of this cause was before the court and that the court heard both of these depositions; that the plaintiffs interposed objections on the ground of incompetency and the court reserved its ruling on plaintiffs' objections, and the record disclosing no affirmative ruling excluding them, if there is any presumption to be indulged it is that the court having heard the depositions. considered them in its final analysis of the case.

### V.

Appellant insists that the court committed error in the admission of the depositions in evidence of W. R. Juden and W. C. Brown. These depositions were offered for the purpose of showing the return on the justice's execution, which had been lost. We deem it unnecessary to discuss the admissibility of these depositions, for under the other disclosures of the record it is clear that the admission of them, even conceding that their testimony was inadmissible, was harmless, for the record discloses that the same facts referred to and embraced in the depositions of Juden and Brown were shown by the certified copy of the justice's docket introduced by the plaintiffs, as well as by the original docket offered by the defendant; therefore, we deem it unnecessary to burden this opinion with a discussion of a proposition which, in the end, could not affect the result of the trial.

### VI.

It is next urged by appellant that plaintiffs are estopped from assailing the deed from G. L. Edwards to M. A. Edwards, and asserting that it was a voluntary conveyance and therefore fraudulent as to existing creditors. This contention is predicated upon the fact of plaintiffs' dismissing their attachment before the

justice of the peace.  It is sufficient to say upon this proposition that the question of a fraudulent disposition of the real estate by G. L. Edwards was not litigated in that proceeding and the mere dismissal of the writ of attachment in that suit, did not in any way change the attitude or relation of the parties in respect to such property, and in our opinion cannot operate as an estoppel upon the plaintiffs in this proceeding.

## VII.

It is next insisted that W. E. Edmonds, who, it is claimed, is the present owner of this land by conveyances emanating from Mrs. M. A. Edwards, is an innocent purchaser, therefore his purchase should be protected.  It is only necessary to say upon that proposition that  W. E. Edmonds is not a party to this proceeding and at no time did he file any motion, while the case was pending against the only defendant William McGaugh, to be made a party, under the provisions of section 3057, Revised Statutes 1899.  Again it may be said that if any force or effect is to be given the disclosures of the record in this cause, then the question of being an innocent purchaser can find no resting place in this proceeding.  The record before us shows that there was a proceeding begun in the circuit court of Stoddard county at the March term, 1894, by these plaintiffs against G. L. Edwards et al., in which proceeding the good faith and the validity of the deed from G. L. Edwards to his wife, Mary A. Edwards, was challenged; that at said March term, 1894, defendant applied for a change of venue and H. H. Bedford, Esq., was selected as special judge.  The cause was tried by Judge Bedford on the 15th of October, 1895, and was taken under advisement.  On the 20th day of September, 1900, without any decision, the case was dismissed.  At that time Judge J. L. Fort was on the bench.  He testifies in this proceeding that he did not

dismiss the case, but that Judge Bedford may have taken the bench and done so. The plaintiffs in that proceeding had no means of terminating the special judge's period of advisement; therefore before the dismissal of that suit they brought the present action of ejectment, filing their petition on the 31st day of August, 1900.

We are unable to see how any one dealing with this property after the March term, 1894, of the circuit court of Stoddard county, could be treated as an innocent purchaser without notice. It is further made manifest from the disclosures of the record that W. E. Edmonds, for whom learned counsel invoke the aid of the rule applicable to innocent purchasers, was one of the attorneys who appeared for the defendant in the court below and appears in this court as an attorney representing the defendant; however, we repeat that W. E. Edmonds is not now and was not at any time a party to this suit, nor does the record disclose that he had any connection with the defendant as landlord or otherwise, excepting as counsel. The record before us discloses that it was admitted by counsel for plaintiffs and defendant at the time of the filing of this suit, August 31, 1900, that William McGaugh was in possession of the property in suit. The record also discloses that the only defendant to this proceeding, William McGaugh, at one time claimed by mesne conveyances under Mrs. M. A. Edwards, and that whatever interest he had was sold on the second day of August, 1900, under a deed of trust executed by him to S. P. Jeffers as trustee for J. L. Fort and George Houck. It is further apparent from the record that before he yielded possession to the purchaser of the property at the trustee's sale, the present action of ejectment was brought against him, and none of the subsequent claimants saw fit to recognize him as a tenant or to join him in this suit.

Section 3056, relating to actions of ejectment, provides that "the action shall be prosecuted in the real names of the parties thereto, and shall be brought against the person in possession of the premises claimed." William McGaugh is the sole defendant in this proceeding and after the trustee's sale he made no claim to this property through or by virtue of conveyances from any one else.

## VIII.

It is next insisted that even though the deed from G. L. Edwards to his wife, Mrs. M. A. Edwards, was a voluntary conveyance and thereby fraudulent as to creditors, yet upon the death of her husband she had a dower and that W. E. Edmonds, by reason of the conveyances, at least is the owner of such dower interest and therefore there can be no recovery in this action.

Upon this proposition it is sufficient to say that it must not be overlooked that W. E. Edmonds is not a party to this proceeding, nor has he proceeded under the provisions of the statute to be made a party, and the record discloses an admission by the parties to this proceeding that William McGaugh was in possession of the property in dispute at the time this suit was instituted. While it may be said that, if the widow of G. L. Edwards was in possession of the land in controversy with an unassigned dower interest existing in her favor, the action of ejectment would not lie against her until such dower interest was assigned, that is not this case. The party against whom this suit was instituted, William McGaugh, who undoubtedly was in possession of the property at the commencement of the suit, and was the proper person against whom to bring the action, has no dower interest in the premises, for whatever interest he had was foreclosed under the trustee's sale on the 2d day of August, 1900.

It is not pretended that W. E. Edmonds did not know of the pendency of this suit against McGaugh, and there is an entire absence from the record of anything which discloses that he made any efforts to be made a party to this proceeding to the end that whatever rights he had might be litigated. If he is the owner of the dower interest of Mrs. Mary E. Edwards, widow of G. L. Edwards, such rights in a proper proceeding may be litigated with such party or parties as may claim to be the owners of such land in fee. The dower interest of Mrs. Edwards, claimed by Mr. Edmonds, cannot be invoked by the defendants in this proceeding as an outstanding title which will defeat this action of ejectment.

### IX.

This brings us to the consideration of the final question in which the sufficiency of the testimony to support the finding and judgment of the court, as disclosed by the record, is challenged.

Upon this proposition it is only necessary to say that we have carefully read in detail all of the testimony developed at the trial of this cause, and after a most careful consideration of it we see no escape from the conclusion that the finding and judgment of the trial court is fully supported by the showing made upon the trial. That at the time of the execution of the deed to his wife, G. L. Edwards was indebted to the plaintiffs, and that the deed conveying the premises in dispute directly to the wife was a voluntary conveyance, as shown upon the face of the deed, are facts which are not controverted in this proceeding. In addition to this it is shown by the testimony that G. L. Edwards somewhere near the time of making this voluntary conveyance to his wife of the land in dispute also conveyed his farm to his stepfather, Mr. Newton; by this conveyance he deprived himself of all the real property he owned in Stoddard county.

The rules of law applicable to the state of facts as shown in this case are well settled by this court as well as the courts of appeals, and even though this conveyance made to the wife of G. L. Edwards may not have been executed with any fraudulent intent, yet being a voluntary conveyance it is void as to existing creditors, even though there was no fraudulent intent. [Patten v. Casey, 57 Mo. 118; Payne v. Stanton, 59 Mo. 158; White v. McPheeters, 75 Mo. 286; Bohannon v. Combs, 79 Mo. 305; Boatmen's Savings Bank v. Overall, 16 Mo. App. 510; Strauss v. Ayers, 34 Mo. App. 248; Farmers & Merchants Bank v. Price, 41 Mo. App. 291; Loehr v. Murphy, 45 Mo. App. 519.]

In Snyder v. Free, 114 Mo. l. c. 369, the law upon this proposition was approvingly quoted from Bump on Fraudulent Conveyances (2 Ed.), pp. 276 and 277, wherein the rule is announced that "when a deed is shown to be voluntary as to existing creditors, that is, when it is not founded on a valuable consideration, then 'the burden of proof rests upon the donee to establish the circumstances which will repel the presumption of a fraudulent intent. The conveyance stands condemned as fraudulent unless the facts which may give it validity are proved by him. If no evidence is given to show that the donor had ample means to meet his liabilities, then the transfer must be deemed void as against creditors.' [Bump on Fraudulent Conveyances (3 Ed.), pp. 267, 277.]"

In Hoffman v. Nolte, 127 Mo. l. c. 135, the statement of the law as herein indicated by Mr. Bump in his work on Fraudulent Conveyances and approved in Snyder v. Free, 114 Mo. 360, was again expressly approved by this court, and it was expressly ruled in that case that a purely voluntary conveyance of property by a debtor to his wife, as to a prior existing creditor, is presumptively fraudulent in law, citing

Patton v. Bragg, 113 Mo. 601; Jordan v. Buschmeyer, 97 Mo. 94.

We have then in this case the existing indebtedness of G. L. Edwards, his voluntary conveyance of the land in dispute to his wife and in addition the conveyance to his stepfather, which deprived him of all the real estate that he owned in Stoddard county, and to rebut this presumption we have the testimony of the wife to whom the voluntary conveyance of the property was made, together with that of her mother, and their testimony is to the effect that the conveyance to the wife was made in satisfaction of a debt due Mrs. Summers, the mother of Mrs. M. A. Edwards. Doubtless the trial court in considering the testimony developed at the trial, kept in view the well-settled rules applicable to transactions between husband and wife. In Benne v. Schnecko, 100 Mo. l. c. 257, this court, in discussing the proposition as to a transaction between husband and wife, thus stated the rule: "There is no doubt but what a husband may make a valid settlement upon his wife, for a valuable consideration. 'Such settlements, however, are always watched with considerable jealousy, on account of the relative situation of the parties, and the convenient cover they afford to a debtor to protect his property and impose upon his creditors, and the payment of a valuable consideration must be made out by proof of the most unquestionable character.' [Bump, Fraud. Conv. (3 Ed.), 306; Besson v. Eveland, 26 N. J. Eq. 468; Humes v. Scruggs, 94 U. S. 22.]"

In Holloway v. Holloway, 103 Mo. l. c. 282, Judge BLACK, speaking for this court, stated the rule in this language: He said: "Transactions between husband and wife should be closely scrutinized when they come in conflict with the claims of creditors, for the marital relation affords a convenient cover to protect the property of the debtor from his creditors."

Mr. Bump in his standard work upon Fraudulent Conveyances, in discussing the nature and character of the testimony which is essential to rebut the presumption of fraud attending a voluntary conveyance, lays down the rule in this way: "To rebut the presumption of fraud the proof must be clear, full and satisfactory. If there is a reasonable doubt of the adequacy of the grantor's means, then the voluntary conveyance must fall, for the effect of it is to delay and hinder his creditors. It is incumbent on the donee to show a case not only without taint, but free from suspicion. The condition of the donor must be shown to be such that a prudent man with an honest purpose and a due regard to the rights of his creditors could have made the gift." [Bump on Fraudulent Conveyances (3 Ed.), p. 285.] "If the donor at the time is indebted to the extent of insolvency, the conveyance is void. A gift by a person unable to pay his debts so directly and inevitable tends to delay and hinder creditors, and so plainly violates the moral duty of honesty, that the least regard to fair dealing and integrity renders it necessary to pronounce it void. Such a transaction is not to be looked on only as a means by which the intent to defraud may be inferred. The act is altogether incompatible and irreconcilable with a contrary intent. It is an act of fraud in itself. If the donor is insolvent, the only question is whether or not a conveyance is voluntary, and if it is voluntary it is void as against creditors." [Bump on Fraud. Conv. (3 Ed.), pp. 280, 281.]

Applying the rules as herein indicated to all of the facts as developed in this case, including the testimony of the wife of G. L. Edwards, the debtor and her mother, taking into consideration their relationship, their interest in sustaining the conveyance to Mrs. Edwards, their natural inclination to maintain its validity, we are unwilling to say, in view of all the facts

developed at the trial, that the finding and judgment of the trial court was not supported by the evidence in the case. Measured by the uniform rules repeatedly announced in this court ever since its organization applicable to the subject of fraudulent conveyances, and which are in harmony with the expression of opinion of the appellate courts in other jurisdictions, as well as the standard text-writers upon the subject, we are unable to reach any other conclusion than that the facts. disclosed by the record in the trial of this cause fully support the finding and judgment of the trial court.

We have given expression to our views as herein indicated upon the leading and most important proposition disclosed by the record, which results in the conclusion that the judgment of the trial court should be affirmed, and it is so ordered.

All concur.