HAZEL MUELLER, RESPONDENT, v. ORPHRED H. BROOKS, JR., MAY F. BROOKS, WILLIAM H. BROOKS, M. W. BROOKS, A. M. COLLINS; ORPHRED H. BROOKS, JR., MAY F. BROOKS AND WILLIAM H. BROOKS, AS TRUSTEES AND THE LAST BOARD OF DIRECTORS OF SARAMA INVESTMENT COMPANY, DEFENDANTS. WILLIAM H. BROOKS, APPELLANT.—189 S. W. (2d) 113.

St. Louis Court of Appeals. Opinion filed July 3, 1945.

*Chilton Atkinson* and *Wm. J. Becker* for appellant ·William H. Brooks.

*Horace T. Robinson* and *Robert L. Maul* for respondent.

848

SUTTON, C.—This is an action, commenced on February 24, 1942, to reform a warranty deed and cancel a promissory note and deed of trust. Plaintiff, Hazel Mueller, is the daughter of Elizabeth B. Mueller, who died testate in St. Louis, on January 21, 1942. By her will, which was duly admitted to probate, she devised to her daughter, Hazel Mueller, the real estate involved in this action, known as 6712 Chamberlain Avenue, in University City, St. Louis County. The note sought to be canceled is for five thousand dollars. The deed of trust sought to be canceled secures the payment of this note, and covers on the real estate known as 6712 Chamberlain Avenue.

Orphred H. Brooks, Jr., is a brother-in-law of Elizabeth B. Mueller, having married her sister Sarah Brooks. William H. Brooks is a brother of Elizabeth B. Mueller, May F. Brooks and Sarah Brooks.

M. W. Brooks is a brother of Orphred H. Brooks, Jr. M. W. Brooks and Orphred H. Brooks, Jr., are not related by blood to Elizabeth B. Mueller, May F. Brooks, Sarah Brooks or William H. Brooks. Orphred H. Brooks, Jr., May F. Brooks and William H. Brooks are the last board of directors of the Sarama Investment Company, a corporation, whose charter was forfeited prior to the commencement of this action. May F. Brooks was the president of the Sarama Investment Company, and Orphred H. Brooks, Jr., was its secretary.

The note and deed of trust sought to be canceled were executed by Michael O. Fischer and Anna Fischer, his wife, who were the record owners of the property conveyed. M. W. Brooks is the trustee named in the deed of trust. The note and deed of trust are dated April 10, 1929. The deed of trust was acknowledged on April 26, 1929. The note is made payable to A. M. Collins three years after date, and is endorsed as follows:

"4-10-32—The within note is hereby
extended to mature on April 10, 1934
"Without recourse on me
A. M. Collins
4-10-34
"This within note is hereby extended to
become due April 10, 1937. Interest
paid to 4/10/34
"April 10, 1937—This note is hereby
extended to become due on April 10,
1942. Interest is paid to 4/10/37. Dec.
1, 1938—Paid on this note by Elizabeth
B. Mueller—Fifty Dollars."

These endorsements, except the endorsement of A. M. Collins, are all in the handwriting of Orphred H. Brooks, Jr.

Michael O. Fischer and Anna Fischer were straw parties, and, immediately after executing the note and deed of trust, conveyed the property to the Sarama Investment Company, which had just previously conveyed it to them. The deed of trust was duly recorded in the office of the recorder of deeds of St. Louis County. The Sarama Investment Company, by May F. Brooks as president and Orphred H. Brooks, Jr., as secretary, executed the warranty deed sought to be reformed. It is dated May 1, 1934, and conveys to Elizabeth B. Mueller the property known as 6712 Chamberlain Avenue. It contains the following recital:

"This deed is made subject to all deeds of trust, building lines, restrictions, easements and conditions now of record against the real estate herein described and conveyed."

It also contains an exception to the express covenants of warranty, as follows: "Excepting the general and special taxes for 1929 and thereafter, and excepting the liens and encumbrances now of record."

A paper dated April 30, 1934, was put in evidence. It acknowledges receipt from Elizabeth B. Mueller of the promissory note for five thousand dollars and the deed of trust securing it on 6712 Chamberlain Avenue, and recites, among other things, that a deed for the property at 6712 Chamberlain Avenue is to be executed by the owner thereof to Elizabeth B. Mueller in exchange for the note and deed of trust, and that said note and deed of trust are delivered to Orphred H. Brooks, Jr., for Sarama Investment Company. The paper is signed O. H. Brooks, Jr., Sarama Investment Company, by O. H. Brooks, Jr. It is in the handwriting of Orphred H. Brooks, Jr.

The recitals in the warranty deed heretofore set out and all other written portions of the deed are in the handwriting of Orphred H. Brooks, Jr.

On July 3, 1934, Orphred H. Brooks, Jr., wrote Elizabeth B. Mueller a letter in which he stated, among other things, that the deed for 6712 Chamberlain Avenue from Sarama Investment Company to Elizabeth B. Mueller was filed June 30, 1934, in the office of St. Louis County Recorder of Deeds and would be forwarded to her in a day or two, that by mistake he left it with some other papers and would get it back. He further said: ''The deed is of record and the property is yours. . . . You will be besought and besieged by scoundrels who will come to you in the guise of friends and advisers, and through hypocrisy and long-faced sanctimoniousness try to defraud you of the property. If I can help you let me know.''

Defendants put in evidence a promissory note dated July 17, 1932, for $14,500 payable on demand to the order of Wm. H. Brooks, signed by O. H. Brooks, Jr. The note is endorsed in blank by Wm. H. Brooks. Other endorsements on the note follows:

"July 17, 1934—Int. on this note paid to date.
"July 17, 1934 Paid on this note Twelve Thousand five hundred dollars ($12,500.00)
"Oct. 20, 1938
"Paid in full
"Wm. H. Brooks.''

Defendants put in evidence a letter dated July 17, 1934, addressed to William H. Brooks, signed by O. H. Brooks, Jr. In this letter O. H. Brooks, Jr., offered to William H. Brooks one principal note for $5,000, secured by a first deed of trust on 6712 Chamberlain Avenue, and one note for $7,500 secured by deed of trust on 5950-52 Park Lane Avenue as part payment of his note for $14,500, stating that the $7,500 note would be due on April 10, 1938 and the $5,000 note would be due on April 10, 1937, and stating further, "I am the lawful owner of such notes, and I hereby transfer and assign all of my right, title and interest in said notes and deeds of trust securing same to you.'' Below the signature of O. H. Brooks, Jr., is the following:

"Accepted July 17, 1934 and all papers received.

"WM. H. BROOKS

"Witness

"MAY F. BROOKS."

It was shown, without dispute in the record, that at the time of the transaction between Orphred H. Brooks, Jr., and Elizabeth B. Mueller, whereby she received the warranty deed and delivered her note and deed of trust to him, the property at 6712 Chamberlain Avenue, covered by the deed of trust, was of the value of $4200 to $4750. This was $250 to $800 less than the amount of the promissory note secured by the deed of trust. Besides, it appears that the taxes from 1929 to 1934, when the warranty deed was made, were delinquent and unpaid, amounting to $532.42. Mrs. Mueller afterwards paid these taxes.

Copies of income tax returns prepared by Orphred H. Brooks, Jr., for Elizabeth B. Mueller show interest had been paid by Mrs. Mueller on two notes and deeds of trust on other property, but show no interest paid on the five thousand dollar note and deed of trust here involved, between 1935 and 1940. No copies of income tax returns for other years were found among her papers. An insurance policy on the property at 6712 Chamberlain Avenue was put in evidence. This policy was written by Orphred H. Brooks, Jr., and was issued on August 20, 1941, in favor of Elizabeth B. Mueller. It contained no mortgage clause making the policy payable to the holder of the note secured by the deed of trust.

May F. Brooks testified, for defendants, that she saw the notation of December 1, 1938, placed on the back of the five thousand dollar note; that Orphred H. Brooks, Jr., wrote it there; that Elizabeth B. Mueller brought in the fifty dollars and made the payment.

The record does not show the exact date on which Mrs. Mueller became the owner of the note for five thousand dollars. It appears, however, that she was the owner of it on April 10, 1932, the date of the notation, in the handwriting of Orphred B. Brooks, Jr., purporting to extend the note to April 10, 1934.

Orphred H. Brooks, Jr., was in the real estate and insurance business. He handled real estate and other business for Elizabeth B. Mueller. There can be no question that there was a fiduciary relation existing between them.

There was no testimony showing that Elizabeth B. Mueller ever paid any interest on the note for five thousand dollars, excepting the testimony of May F. Brooks, president of the Sarama Investment Company, with respect to the payment of fifty dollars.

May F. Brooks testified that she was present when the note for $14,500 was signed by O. H. Brooks, Jr.; that she was present when the money was given for that note; that the money was given in different amounts beginning about 1929, 1930, and 1931; that

William H. Brooks lived with her at that time; that Orphred H. Brooks, Jr., moved in with her and William H. Brooks about 1938; that she was present when the payment of $12,500 shown by notation on the back of that note was made; that Orphred H. Brooks, Jr., brought these two deeds of trust, $5,000 on the Chamberlain Avenue property and $7,500 on the Park Lane property, and gave them in part payment for money that had been advanced him by William H. Brooks for building purposes; that these deeds of trust were delivered to William H. Brooks and the entry on the back of the note was made at that time.

Orphred H. Brooks, Jr., testified that when the receipt for the five thousand dollar note and deed of trust was given to Elizabeth B. Mueller, she handed him the deed of trust and note; that he delivered the deed of trust and note to William H. Brooks on July 17, 1934, and that at that time he made the endorsement of a credit on the back of that note.

Shortly after the death of Elizabeth B. Mueller the attorney representing the administratrix of her estate had a conversation with Orphred H. Brooks, Jr., and he told the attorney that the deed of trust securing the note for five thousand dollars was owned by some members of Mrs. Mueller's family; that he could not tell all the facts about it; that he was living out there with them and he was afraid it would affect his being able to live out there if he told him the facts. As the attorney put it, he "couldn't get anything out of him about it definitely; he beat around the bush about it quite a bit."

William H. Brooks did not testify, and was not present at the trial. Orphred H. Brooks, Jr., testified that William H. Brooks had been ill for a long time and was unable to attend the trial.

The court gave judgment canceling the five thousand dollar note and deed of trust, and reforming the warranty deed by striking therefrom the following clause: "This deed is made subject to all deeds of trust now of record against the real estate herein described and conveyed", and by striking from the deed the following clause: "Excepting the liens and encumbrances now of record."

Defendant William H. Brooks appeals.

The warranty deed involved in this case was the culmination of a transaction so unconscionable and so out of accord with honesty and fair dealing and the usual course and method of doing business, that it is hard to believe that the deed represents the real understanding and agreement of the parties. What rational purpose could have brought Mrs. Mueller, as the holder of the deed of trust on the Chamberlain Avenue property, to transfer the deed of trust to the owner of the property in exchange for the warranty deed conveying the property to her subject to the deed of trust, which was for an amount concededly more than the value of the property? Prior to the transaction she had a deed of trust in the principal amount of

$5,000 on property worth from $4200 to $4750, with $532 delinquent taxes against it, and when the transaction was completed she had nothing but a scrap of paper, that is, a warranty deed to property worth from $4200 to $4750, encumbered by a deed of trust in the principal amount of $5,000 and delinquent taxes in the amount of $532. The transaction is susceptible of only one rational explanation, that is, that Mrs. Mueller wanted to take over the property in satisfaction of the deed of trust and that the deed of trust and note were delivered to Orphred H. Brooks, Jr., for the Sarama Investment Company, with the understanding between them that the note and deed of trust should be canceled and satisfied, and that Orphred H. Brooks, Jr., taking advantage of the opportunity afforded by the fiduciary relation existing between him and Mrs. Mueller, so drew the warranty deed as to keep the deed of trust alive as an encumbrance against the property to the end that he could make use of it for his own financial gain. Of course, a court of equity cannot sanction such conduct.

It is pertinent to observe in this connection that the warranty deed is not made subject to the five thousand dollar deed of trust in specific terms, but it is, in very general terms, made ''subject to all deeds of trust, building lines, restrictions, easements and conditions now of record against the property conveyed.'' It is significant, too, that the notation on the note of the payment of fifty dollars by Elizabeth B. Mueller as of December 1, 1938, is the only notation of a payment on the note stating by whom the payment was made, and that this notation of the payment of fifty dollars is the only notation on the note of any payment subsequent to the notation of the payment of interest as of April 10, 1937, though the death of Mrs. Mueller did not occur until January 21, 1942—a period of nearly five years with no payment on the note, except the alleged payment of fifty dollars, and with no evidence of any effort made to obtain other payments during that period. It looks very much like the notation of the payment of fifty dollars was entered on the note just as a device to convict Mrs. Mueller of a recognition of the note and deed of trust as live instruments. So, also, according to the testimony of May F. Brooks, the note was still in the possession of Orphred H. Brooks, Jr., when the payment of fifty dollars was made. She was present when Mrs. Mueller brought in the money and saw Orphred H. Brooks, Jr., make the notation on the note. William H. Brooks was not present. All this is so notwithstanding, according to the testimony of May F. Brooks and Orphred H. Brooks, Jr., the note had long since been transferred to William H. Brooks in part payment of the note for $14,500. May F. Brooks, according to her testimony, was present when the note for $14,500 was signed and when the money was transferred or given for that note. The money was given in different amounts about 1929, 1930, and 1931. The money belonged

to him and she gave it to him. So that 'this large sum of money accumulated over a period of three years through the payment in cash by William H. Brooks at various times of money handed over to him by May F. Brooks—an unusual mode of doing business. Moreover, it appears that Mrs. Mueller did not take credit for any interest paid on the deed of trust in her income tax returns prepared by Orphred H. Brooks, Jr., and there was no mortgage clause in the insurance policy issued by Orphred H. Brooks, Jr., on the property covered by the deed of trust.

We recognize the rule that fraud is never presumed, but must be shown by clear and convincing proof, but we also recognize the rule that such proof may be made by circumstantial evidence. If this were not so, fraud, because of its secretive nature, could rarely be shown. [Castorina v. Herrmann, 340 Mo. 1026, 104 S. W. (2d) 297, l. c. 302; Conrad v. Diehl, 344 Mo. 811, 129 S. W. (2d) 870, l. c. 877.]

Appellant invokes the rule that a party to a contract cannot have a rescission without restoring to the other party the benefits received under it, or, otherwise stated, without putting the other party *in statu quo*. The rule is not applicable here. This is not an action for a rescission. It is an action to reform the warranty deed so as to make it conform to the actual prior understanding and agreement of the parties and to cancel the note and deed of trust in accordance therewith. This is the proper remedy. [53 C. J., sec. 65, p. 949.]

Appellant further contends that plaintiff's action is barred by laches on account of the failure of Mrs. Mueller to promptly seek relief in the courts. In view of all the facts and circumstances in the case we cannot say that this is so. Mrs. Mueller was an old lady. She was not familiar with the real estate business, or conveyancing, or the methods and practices of the business. Orphred H. Brooks, Jr., was handling her business affairs. He was experienced in the real estate business, having been engaged in that business for many years. The fiduciary relation required of him the utmost fidelity to his client. She had a right to expect such fidelity. She did not get it. On the contrary, he took advantage of her confidence to so arrange matters as to reap financial gain unto himself at her expense, and, having done so, warned her against taking advice from any one but himself. He also told her, ''The deed is of record and the property is yours.'' This imports absolute ownership. It certainly does not import ownership subject to a deed of trust for more than the value of the property. And he said nothing to indicate to her that the deed of trust was still alive. There is in the facts no element of estoppel. Obviously, plaintiff's action is not barred by laches. [Stevenson v. Smith, 189 Mo. 447, l. c. 466, 88 S. W. 86; Schwind v. O'Halloran, 346 Mo. 486, l. c. 496, 142 S. W. (2d) 55, l. c. 60.]

Other questions raised by appellant are necessarily ruled against him by what·we have already said.

The Commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Hughes, P. J.,* and *McCullen* and *Anderson, JJ.,* concur.