Allan PETERSON and Anna May Peterson, Plaintiffs–Respondents,

v.

Jack MEDLOCK and Gertrude Medlock, Defendants–Appellants.

No. 19099.

Missouri Court of Appeals, Southern District, Division One.

Aug. 18, 1994.

Steven Privette, Willow Springs, for defendants-appellants.

R. David Ray, West Plains, for plaintiffs-respondents.

SHRUM, Chief Judge.

Defendants appeal from a decree in which the trial court declared that Plaintiffs have a road easement by implication across Defendants' land and denied Defendants relief on their counterclaim.

Because of our conclusion that the trial court did not commit prejudicial error when, on its own motion, it ordered a survey of the disputed road after the close of all evidence, we affirm the declaration of an easement by implication. Because the legal description of the easement is insufficient, we remand for further proceedings. We reverse the trial court's denial of relief to Defendants on their counterclaim and remand.

## FACTS

Until June 1977, Plaintiffs owned two adjoining 40–acre parcels of land in Howell County, Missouri: the Southeast ¼ of the Northeast ¼ of Section 34, Township 22 North, Range 9 West (Tract A) and the Southwest ¼ of the Northwest ¼ of Section 35, Township 22 North, Range 9 West (Tract B). Plaintiffs' house was located on Tract A near its southeast corner. Access to Tract A was via the now-disputed road, which ran in an easterly direction from Plaintiffs' house, crossed Tract B, and ended at a public highway (now State Route "JJ").

Plaintiffs' evidence concerning the use of the road included testimony from Plaintiff Allan Peterson that he and his wife had lived on Tract A for 44 years during which time they had continuously used the disputed road as the only access to their home. Former Howell County Commissioner Buford Skaggs testified that he had "known [the road] for over 60 years." He said that during that period there never was a time the disputed road was not used to go to and from what is now Plaintiffs' house and he had never known of any other road to the house.

On June 24, 1977, Plaintiffs sold Defendants Tract B without expressly reserving or mentioning in the deed a road easement to serve Tract A.

Controversy over the road arose in 1988 after Defendant Gertrude Medlock bought the 20–acre "Knox" tract. Described as the North ½ of the Northwest ¼ of the Southwest ¼ of Section 35, Township 22 North, Range 9 West, the Knox tract lay south of and adjoined Tract B. After buying the Knox land, Defendants began to fence it and Tract B. When Defendants erected gates at each end of the disputed road, Plaintiffs sued.

In Count I of their petition, Plaintiffs asked the trial court to declare that they had a "prescriptive easement established by use and necessity, or in the alternative ... by implication at the time Defendants purchased their property from Plaintiffs." In the same count, Plaintiffs alleged facts in addition to those in support of their easement claim and requested money damages. In Count II, Plaintiffs sought an order preventing Defendants from blocking Plaintiffs' use of the road. In response to Count II, the trial court entered a temporary restraining order against Defendants and, later, a preliminary injunction.

In their answer to Plaintiffs' Count I, Defendants denied that Plaintiffs were entitled to relief but stated, "Defendants admit that Plaintiffs traversed a roadway across land of Defendants which was formerly owned by Plaintiffs."

Defendants filed a counterclaim having three counts; in each count they sought money damages. By separate motion, Defendants requested the trial court to sever the "claim of Plaintiffs for a declaration of easement" from "the counterclaim of Defendants for damages." A docket sheet entry of January 29, 1992, states, in part, "Hearing on motion to sever → Sever Counterclaim ... Easement Case set Bench Trial 4/3/92."

The "easement case" was tried April 16, 1992. Although Defendants' motion to sever the claims and the trial court's ruling appeared to separate for trial only Defendants' counterclaim, the transcript of the April 16 trial indicates the court and counsel for both sides treated all money damages claims, including that of Plaintiffs, to have been severed. Plaintiffs' counsel did not offer evidence directly related to his clients' alleged damages, and Defendants' attorney objected on the few occasions that Plaintiffs' evidence appeared remotely related to Plaintiffs' damages claim. Defendants offered no evidence concerning their claims for damages.

On June 23, 1992, the trial court entered an "Interlocutory Order" in which it declared the existence of an easement by implication and ordered a survey of the roadway "to describe its exact location as to the property line in question...."

Nearly 14 months later, on August 6, 1993, after completion of the survey, the trial court held another hearing. Willard Schnurbusch, registered land surveyor, testified he located the south line of the Northwest Quarter of Section 35, Township 22 North, Range 9 West (the southern boundary of Tract B) and found that the disputed road lay entirely north of that line.

Asked how wide a strip of land the road occupied, Schnurbusch replied, "It's a gravel-type thing of irregular dimensions, but we chose to call it approximately ten feet wide for the road itself." On a plat identified by the surveyor as containing the results of his survey (admitted into evidence as Plaintiffs' Exhibit 8), the disputed road is depicted in an inset drawing. The drawing shows the road to be on Tract B, located north of the quarter section line and south of a fence. The distance between the fence and the quarter section line is not indicated on the drawing. Asked about the distance, Schnurbusch said, "From memory ... it's approximately 30 feet between the fence and ... the quarter section line."

Schnurbusch agreed that the road was "not perfectly straight." He said the road was "what you might expect for a gravel road. It gets from Point A to B." The drawing, marked "Not to Scale," shows the "appr. centerline" to be 8 feet north of the southwest corner of Tract B. The "appr. centerline" is 12 feet and 14 feet, respectively, north of two steel fence posts set at unspecified positions along the south boundary of Tract B.

On August 9, the trial court wrote the attorneys for the parties. In the letter the court stated its findings and conclusions, including a ruling in favor of Plaintiffs on Defendants' counterclaim, but made no reference to Plaintiffs' claim for damages. In the letter, the court directed the attorney for Plaintiffs "to prepare a judgment and to present to [Defendants' attorney] as to form only and for submission to the court for signature." The letter closed with the request, "If there is anything that I have not covered in this letter or that you cannot glean from the Interlocutory Order of June 23, 1992, please let me know."

In response Plaintiffs' counsel submitted a document denominated "Judgment, Findings and Conclusions of Law," which the trial judge signed without change other than to add the date he affixed his signature. In that document, filed September 28, 1993, the court stated that Plaintiffs were "entitled to the use and benefit of the road or lane as depicted upon the survey, which road is established as an easement by implication." The court found the easement "to be contained within a strip of land thirty feet (30′) wide as depicted on the survey...." The court enjoined Defendants from interfering with Plaintiffs' use of the road. The court made no ruling regarding Plaintiffs' claim for damages and ruled in favor of Plaintiffs on Defendants' counterclaims. The court ordered the cost of the survey to be shared equally by Plaintiffs and Defendants.

## DISCUSSION AND DECISION

*Appellate Court Jurisdiction*

 The trial court did not adjudicate Plaintiffs' claim for money damages. Thus our initial concern is whether the September 28, 1993, document designated "Judgment, Findings and Conclusions of Law" is indeed a "Judgment" as defined in Rule 74.01(a) as "a decree and any order from which an appeal lies."[1] If an appeal does not lie, we have no jurisdiction to consider the merits of the case. *See, e.g., O'Neill v. O'Neill,* 864 S.W.2d 7 (Mo.App.1993); *Concepts Communication Management Corp. v. Newhard Cook & Co.,* 829 S.W.2d 554 (Mo.App.1992). When the parties do not question appellate jurisdiction, we must inquire on our own motion. *Concepts Communication Management Corp.,* 829 S.W.2d at 555[2].

 A decree is a "judgment," that is, an appeal lies from it, when the decree disposes of all claims and all parties and leaves nothing for future determination. *O'Neill,* 864 S.W.2d at 8[2]; *Concepts Communication Management Corp.,* 829 S.W.2d at 555[3]. Actions involving multiple claims or multiple parties are governed by Rule 74.01(b), which provides:

> "When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may enter a judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of such determination, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

In this case, the trial court made no "express determination that there is no just reason for delay." Thus our question is whether the court's decree of September 28, 1993, is a "Judgment" as defined in the Supreme Court Rules because of the trial court's failure to adjudicate Plaintiffs' claim for money damages.

Although Defendants' motion to sever and the trial court's January 29, 1992, docket entry appear to concern only Defendants' counterclaim, it is apparent from the trial transcript that the court and counsel for both parties considered the damages claims of both sides to have been separated, for purposes of trial, from the request for a declaration of an easement. Nevertheless, in his August 9, 1993, letter, the trial court judge stated his ruling on Defendants' counterclaim. Plaintiffs' counsel then drafted a decree that ruled on Defendants' counterclaim but omitted disposition of Plaintiffs' money damages claim.

 It would strain credulity to conclude that Plaintiffs' attorney somehow considered the issue of Defendants' alleged damages to have been reintroduced into the case prior to submission while Plaintiffs' claim of damages remained separated. Thus when Plaintiffs' counsel, admonished by the trial judge to advise him of "anything that I have not covered," submitted for the court's signature a decree that disposes of Defendants' counterclaim but omits reference to Plaintiffs' damages claim, the only logical conclusion is that Plaintiffs had abandoned their damages claim and, therefore, the decree disposes of all claims and all parties. Thus we hold that the decree is a judgment, that the requirement of an "express determination that there is no just reason for delay" was not applicable, and we have jurisdiction to consider the merits of the appeal.

*Allegation of Error in Ordering Survey*

 An easement by implication arises, if at all, out of the severance of two adjoining properties. *Causey v. Williams,* 398 S.W.2d 190, 197[4] (Mo.App.1965). *See Maupin v.*

---

1. Whether the judgment—if the decree is a judgment—is "final" under Rule 81.05 is not an issue in this case.

*Bearden,* 643 S.W.2d 860, 865[3] (Mo.App. 1982). Elements necessary to establish such an easement are stated in *Causey:*

> " 'It is well-settled rule that where, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another part, which servitude *at the time of the severance, is in use* and is reasonably necessary for the fair enjoyment of the other part of the estate, then upon a severance of the ownership, a grant of the right to continue such use arises by implication of law.' "

*Id.* at 197[5] (quoting 17A Am.Jur. *Easements* § 41 at 652–53 (1957)) (emphasis added by *Causey* court).

In their first point, Defendants charge that the trial court erred when it ordered a survey of the road after the close of evidence. They argue that Plaintiffs had to prove that the disputed road was on Tract B, the purported servient tract, to establish an element of an easement by implication, i.e., unity of title at the time of the severance. Defendants insist that because Plaintiffs rested without proving the road was on Tract B, the effect of the court-ordered survey was to supply evidence otherwise missing from Plaintiffs' case.

With reference to Defendants' first point, it is sufficient to recall the following from their answer: "Defendants admit that Plaintiffs traversed a roadway across land of Defendants which was formerly owned by Plaintiffs." We note that the foregoing statement was not contained within an alternative pleading.

■■■ A defendant is ordinarily bound by his answer and the position taken therein. *See Conrad v. Diehl,* 344 Mo. 811, 129 S.W.2d 870, 872[1] (1939). When a litigant, using unambiguous language, pleads facts that admit an essential element of his adversary's case, he cannot escape the legal effect when he has not attempted to amend or revoke the admission for error of fact. *Boyle v. Higman Equipment Co.,* 597 S.W.2d 205, 207 (Mo.App.1980) (citing *E.C. Robinson Lumber Co. v. Ladman,* 255 S.W.2d 72, 78[9] (Mo. App.1953)). "[A]n allegation of fact in an answer upon which the case is being tried is

binding on the pleader and for the purpose of the trial such party is precluded from maintaining a contrary or inconsistent position." *Wehrli v. Wabash R.R. Co.,* 315 S.W.2d 765, 773[9] (Mo.1958), *cert. denied,* 358 U.S. 932, 79 S.Ct. 321, 3 L.Ed.2d 304 (1959). Quoting from 4 Wigmore on Evidence § 1064 at 45–46 (3d ed.), the *Wehrli* court explained:

> " 'The pleadings in a cause are, for the purposes of use in that suit, not mere ordinary admissions ... but judicial admissions ... i.e. they are not a means of evidence, but a waiver of all controversy (so far as the opponent may desire to take advantage of them) and therefore a limitation of the issues.' "

315 S.W.2d at 773.

■■■ Here, the allegation in Defendants' answer is unambiguous. It is a judicial admission that the disputed road was on the 40 acres they purchased from Plaintiffs. Such admission is binding on Defendants and precludes them from now maintaining a contrary or inconsistent position. *See Cameron Mutual Ins. Co. v. Ward,* 599 S.W.2d 13, 17–18 (Mo.App.1980). Defendants are estopped to deny their judicial admission of this issue. *See Ringo v. Parliament Ins. Co.,* 616 S.W.2d 869, 872 (Mo.App.1981). Consequently, we reject Defendants' argument that the trial court's interlocutory order was a measure by the court to supply essential proof that Plaintiffs had failed to furnish. *See Dillon v. Norfleet,* 813 S.W.2d 31, 33 (Mo.App.1991). The trial court had the inherent authority to order a survey to enable it to describe the easement with certainty in its judgment. *Id.* at 33[3]. *See Wills v. Meador,* 638 S.W.2d 297, 298[1] (Mo.App. 1982); *State ex rel. County of Shannon v. Chilton,* 626 S.W.2d 426, 429–30[9] (Mo.App. 1981). Point denied.

*Lack of Specificity in Judgment*

■■■ In their second point Defendants correctly assert that the judgment is defective because it fails to describe the width and location of the road with the certainty required for decrees that affect real estate. They also argue—correctly—that if the trial court's judgment is read as declaring the

easement to be 30 feet wide, that declaration is not supported by the evidence.

 A decree that affects title to real estate must describe the land in question with certainty. *Tripp v. Harryman*, 613 S.W.2d 943, 951[14] (Mo.App.1981). *See also* 27 West's Missouri Digest 2d *Judgment*, key number 226 (Designation and Description of Property) (1984). It is also well settled that when a litigant claims an easement by a theory that includes usage as one of its elements, e.g., by prescription or implication, the character and extent of the easement are decided by the character and extent of the use during the period the easement was created. *Tadlock v. Otterbine*, 767 S.W.2d 366, 368[2] (Mo.App.1989). *See also* 18 West's Missouri Digest 2d *Easements*, key number 41 (Extent of Right: By Prescription) (1984).

 This record lacks evidence showing use of a roadway 30 feet wide. The only evidence concerning the width of use came from surveyor Schnurbusch who testified, "It's a gravel-type thing of irregular dimensions, but we chose to call it approximately ten feet wide for the road itself." On the plat of Schnurbusch's survey, the only width dimension recorded for the road is "appr. 10' wide."

The position of the road within the corridor bounded on the north by the fence and the south by the quarter section line is not adequately depicted on the inset drawing on the surveyor's plat. The "Not to Scale" drawing shows three distances to the approximate centerline of the meandering road from three points along the quarter section line, only one of which—the southwest corner of Tract B—is precisely located. The plat contains no additional information that describes the courses and distances for the centerline nor is that information in the record from any other source. As the description of the easement is insufficient, this portion of the trial court's judgment must be reversed and the cause remanded for further evidence on the question of the width and location of the easement, including additional survey work if necessary. *See Tripp*, 613 S.W.2d at 951.

## Denial of Defendants' Counterclaim

 In their third point, Defendants assert that the trial court erred when it ruled on the three counts of their counterclaim in this judgment because it had earlier ordered a separate trial of those claims. They insist that by ruling their counterclaims adversely to them under such circumstances, the trial court has denied them their day in court. We agree.

 The powers of a trial court are limited to the claims for relief and issues made by the pleadings, and a judgment not so limited is void. *Keen v. Dismuke*, 667 S.W.2d 452, 453[2] (Mo.App.1984). *Hughes v. Wagner*, 303 S.W.2d 181 (Mo.App.1957) illustrates this principle. In *Hughes*, a father filed a motion to modify a divorce decree by lowering his child support obligation and granting him more visitation. During the trial on the motion, the father withdrew that portion of his motion that sought relief by way of reduction in child support. The cause proceeded solely on the issue of temporary custody. Nonetheless, the trial court lowered the father's support obligation. The mother appealed, and the Eastern District reversed, saying "Where a court attempts to adjudicate a question outside the issues raised and submitted, the judgment is to that extent void." *Id.* at 184[2].

As our supreme court has stated:

"In our system of jurisprudence reasonable notice to a litigant (when there exists even the possibility of action adverse to his interests) is deemed to be of the essence of fairness and justice. Reasonable notice to parties whose interests are at stake in a contemplated order is a prerequisite to the lawful exercise of the court's power. Opportunity for a litigant to present his views as to the matters instantly before the court which may affect his rights is the very foundation stone of our procedure."

*Hoppe v. St. Louis Public Service Co.*, 361 Mo. 402, 235 S.W.2d 347, 350 (banc 1951). Although the foregoing was written in explaining why a trial court could not order a new trial upon the ground that the judgment was against the weight of the evidence without giving reasonable notice to the parties

and an opportunity to be heard, those same principles prevent the trial court here from adjudicating Defendants' counterclaims in this trial.

The judgment of the trial court is affirmed in so far as it declares that Plaintiffs have an easement by implication across what we have referred to as Defendants' Tract B. We remand for a determination of the width of the easement and a legal description that is certain. The portion of the judgment ruling Defendants' counterclaims is reversed and the cause remanded.

MONTGOMERY, J., concurs.

FLANIGAN, J., concurs in separate concurring opinion.

FLANIGAN, Judge, concurring.

I concur with the principal opinion's treatment of the merits. I address only one procedural aspect.

In *Colton, McMichael v. Mueller*, 877 S.W.2d 702 (Mo.App.1994), plaintiff filed a petition in five counts. Count V was severed, to be resolved at a later date. A jury trial was held on the other counts. Defendants sought to appeal from the judgment based on the verdict. The purported judgment did not dispose of the severed Count V. The court of appeals held that the trial court's order was not a final judgment and dismissed the appeal for lack of jurisdiction. The court said, at 703–704:

"The judgment appealed from contains no determination that there is 'no just reason for delay.' During oral argument, the parties argued that because Count V was severed, this court may consider the remaining portion of the trial court's judgment. Severance of a claim so that it may be resolved at a later date does not constitute an adjudication, nor is it equivalent to an express finding that there is no just reason for delay as considered in Rule 74.01(b)."

The majority opinion, as I understand it, holds that the instant judgment disposes of all claims and all parties. So viewed, the majority opinion is not inconsistent with *Colton*.