**Paul N. SIDIO, Robert Spragg and Donna Spragg, Plaintiffs,**

and

**Leon Koenig and Gale Koenig, Plaintiffs–Respondents,**

v.

**Joe RICE and Ed Watkins, Defendants–Appellants,**

and

**Peter Realmuto, Gladys Rice, and Sossity Heikkala, Defendants.**

No. 24831.

Missouri Court of Appeals, Southern District, Division Two.

Feb. 10, 2003.

James M. Kelly, Republic, for Appellants.

Gail L. Fredrick, Fredrick, Rogers & Vaughn, P.C., Springfield, for Respondents.

JAMES K. PREWITT, Presiding Judge.

This case involves a dispute regarding the physical location of two rights-of-way, including the traveled portion of an east/west right-of-way and a north/south right-of-way. As best as can be determined from the record, the east/west right-of-way is bounded to the north by one lot owned by Appellant Joe Rice and a second lot possessed by Appellant Ed Watkins (but owned by his parents, who are not parties to the case) and to the south by property owned by Robert and Donna Spragg. The north/south right-of-way is bounded to the east by property owned by Peter Realmuto and his wife (Mrs. Realmuto is not a party to the action) and to the west by a lot, a portion of which is owned by the Spraggs and a portion of which is owned by Paul N. Sidio. As a further aid to understanding the facts, a copy of the survey drawing used as an exhibit at trial (denoted as the R. Andrus Survey) is attached as Appendix A.

On June 3, 1999, Sidio filed a petition for temporary restraining order, preliminary injunction and permanent injunction, and proposed order to show cause why temporary restraining order should not issue. Sidio named Appellant Rice, Appellant Watkins, and Realmuto as defendants. Following a hearing on the petition for temporary restraining order, a memorandum for clerk reflected in the docket sheet indicates that all parties agreed to "take no action to close, block[,] obstruct or in any manner prevent the open and unimpeded use of the road as it now exists or any area claimed to be a roadway."

In October 1999, Gladys Rice, the former wife of Appellant Rice, was added as a

defendant, and Appellant Rice and Realmuto filed an answer to Sidio's first amended petition and a counterclaim for permanent injunction. At a hearing held on November 29, 1999, Sossity Heikkala (Realmuto's granddaughter) agreed to be joined as a defendant, and the Spraggs and Leon and Gale Koenig (Respondents) were joined as plaintiffs. The trial court specified that all parties were bound by its temporary order referenced above, entered on June 9, 1999.

The plaintiffs filed a second amended petition for permanent injunction on January 20, 2000, alleging that the defendants had altered and changed the course of a 40 foot right-of-way, which was designated as a public road and public right-of-way by the recorded plat, and blocked the plaintiffs' full and complete use of the right-of-way. In addition to the count requesting permanent injunctive relief, the petition included counts for declaratory judgment, easement by necessity, and common law dedication.

In his answer, Appellant Rice admitted that he disagreed with the plaintiffs regarding the location of any purported right-of-way and raised as an affirmative defense that the roadway running in front of his property (which lies within the east/west right-of-way) "lies partially or entirely upon [his] property." Appellant Rice also filed a first amended counterclaim for permanent injunction in which he alleged that attempts to maintain and utilize the roadway "have caused the traveled portion . . . to be moved in a northerly direction so that said roadway now lies entirely upon [his] property." He further alleged that only one-half of the roadway should lie on his property. In his prayer for relief, Appellant Rice requested that the plaintiffs be enjoined from trespassing on his property and using the portion of the east/west right-of-way that lies on his property as a roadway.

The same document included another count, which was a counterclaim for permanent injunction by Realmuto and Heikkala. Their prayer for relief was similar to that of Appellant Rice, except that it addressed the north/south right-of-way.

At a hearing held March 17, 2000, Ralph Andrus testified that he purchased property in 1974 that was subdivided into 35 lots in 1976, at which time he asked Mr. Emmet Nightengale to prepare a survey ("the R. Andrus survey") and a plat of the real estate. The plat was recorded in Stone County in 1976.[1]

Each lot had its own legal description, all acreages were computed to the surveyed centerline subject to a perpetual easement for access, and all roads had a 40–foot right-of-way. According to Andrus, each lot gave 20 feet for the roadway easements. Andrus testified that he had maintained the road within the east/west right-of-way, but that the Realmutos primarily maintained the road within the north/south right-of-way.

The plaintiffs requested that John William Read, a professional land surveyor and county surveyor for Stone County, survey the property and prepare a legal description for the road rights-of-way. Read prepared the description using the R. Andrus survey and the recorded plat. The legal description indicated that all lots considered in the case provided 20 feet for the road rights-of-ways, yielding the 40–foot roadway corridors.

Read testified that, based on his legal description, he could make a determination as to the actual location of the road-

---

1. The R. Andrus survey is also referenced as the Nightengale survey within the record.

· For simplicity sake, we will refer to it only as the R. Andrus survey.

way corridors, specifically, he could stake and identify them. He agreed that the legal description did not indicate where the lot lines were. To identify that information, Read testified that a survey would need to begin at some starting point and that although the stone used as the starting point of the R. Andrus survey was now gone, a Corps of Engineers' monument had been placed there. As for surveying the property for the legal description of the roadway corridors, Read used the legal description for lot 35 (owned by the Realmutos), which contained the most specific information regarding a direction and distance from a beginning point.

As for the traveled portions of the roads within the corridors, Andus testified that the road in the north/south right-of-way had shifted west from its original placement. Appellant Rice testified that the road was too far to the east. There was no testimony, however, that any part of the road was outside of the right-of-way corridor. Regarding the road within the east/west right-of-way, Read testified that most of the driving surface of the road was within the 40–foot corridor except for a portion that went outside of the corridor at the southeast corner of the lot owned by Appellant Rice.

The trial court entered a docket entries/judgment on March 24, 2000, which was amended on April 26, 2000. Among the findings was that all parties agreed that the property subdivided by Andrus is subject to 40–foot road right-of-way easements as shown on the R. Andrus survey. Another finding of the trial court was that, since the properties of the defendants, including Appellants Rice and Watkins, as well as Realmuto, Gladys Rice, and Sossity Heikkala, are subject to the easements, the plaintiffs, including Sidio, the Spraggs, and Respondents (the Koenigs), should not be prohibited or enjoined from free use of those rights-of-way that are located within the 40–foot corridor. The trial court stipulated that "the sole issue remaining in dispute in [the] case is the actual physical location of the rights-of way of the parties' property."

The trial court found that the road within the east/west right-of-way was located in the east/west corridor except for a portion that encroached the southeast corner of property owned by Appellant Rice. The trial court also found that two pins placed in the east/west right-of-way by Read mark the centerline of the east/west right-of-way and the southwest corner of the lot possessed by Appellant Watkins and the lot owned by Appellant Rice. Further, a fence installed by Appellant Watkins encroaches on the east/west right-of-way and must be relocated five feet north or completely removed from the east/west right-of-way. According to the trial court, the northwest boundary of the north/south right-of-way can be determined using the beginning point of the legal description for Relamuto's property (lot 35), which was the Corps of Engineers' monument, and the iron pins located by Read.

The trial court entered judgment in favor of the plaintiffs on count I of their second amended petition (permanent injunction) and on the defendants' counterclaims. Judgment was entered in favor of the defendants on all remaining counts of the plaintiffs' petition, which included declaratory judgment, easement by necessity, and common law dedication. However, the trial court's judgment also stipulated that "[b]ecause [the] defendants have chosen not to accept the work of surveyor Read, they are directed to employ a surveyor of their choice, at their expense, to actually mark and locate the boundaries of the rights-of-way as described [in the judgment]."

On May 12, 2000, the trial court granted the defendants sixty days from that date to complete the referenced survey to mark the boundaries of the road corridors or rights-of-way. On July 11, 2000, the defendants filed a survey purporting to mark the boundaries of the road corridor. On November 8, 2000, the plaintiffs filed a motion for contempt and on December 8, 2000, Appellants Rice and Watkins filed an application for order to show cause why the Spraggs should not be held in contempt of court, alleging that the Spraggs had sought to construct a fence within the roadway corridor as staked by the surveyor employed by defendants.

In the plaintiffs' second amended motion for contempt, filed January 19, 2001, they allege that Appellants Rice and Watkins erected posts and fencing that interfered with the plaintiffs' use of the rights-of-way. The plaintiffs also contended that the surveyor employed by the defendants failed to actually mark and locate the boundaries of the rights-of-way according to the stipulations of the judgment.

Following a hearing on the above order and motions, held on February 9, 2001, the trial court found that the surveyor employed by the defendants acknowledged that he did not use the point or the pins specifically referenced in the judgment to mark the boundaries of the rights-of-way. Therefore, according to the trial court, the survey did not comply with the judgment.

The trial court did not find any evidence of bad faith by any party sufficient for it to use its power of contempt. The trial court granted the defendants until April 10, 2001 to "complete the survey as previously ordered." All parties were directed to remove any fence posts or stakes placed by anyone other than a surveyor. Judgment was entered against Appellants Rice and Watkins for the Spraggs' reasonable attorney's fees in the sum of $750.

On April 12, 2001, Appellants Rice and Watkins filed a motion for entry of final judgment, or in the alternative, for presentation of further evidence. They alleged that they were unable to comply with the trial court's directives concerning the preparation and filing of an additional survey. Appellants Rice and Watkins asked the trial court to enter "final [j]udgment setting forth the location of the roadway in question and identifying the same by legal description ... or ... reopen the herein matter for the limited purpose of having the parties submit the proposed location and legal description of any said roadway together with surveys prepared in conjunction therewith and pursuant to the requirements of Section 60.150 RSMo."

On April 23, 2001, the plaintiffs filed a motion for contempt, alleging that Appellants Rice and Watkins had failed to obtain a survey as required by the previous orders. Following a hearing on the motions, the trial court filed a docket entries/judgment on February 12, 2002. The trial court found that the judgment entered March 24, 2000, which was amended on April 26, 2000, accurately described and defined the rights-of-way in question by reference to the two iron pins marking the centerline of the east/west right of way and the southwest corner of the lot possessed by Appellant Watkins and the lot owned by Appellant Rice, as well as the Corps of Engineers' monument used as the beginning point for the legal description for the lot owned by Realmuto.

The trial court overruled the appellants' motion for entry of final judgment as moot, stating that the judgment entered on March 24, 2000 (as amended on April 26, 2000) was a final judgment. According to the trial court, the directive regarding an additional survey to be filed by the defendants was an "action to assist the parties in identifying the actual physical location

of the rights-of-way but was not necessary to establish or describe them."

Based upon the fact that the defendants did not appeal that judgment and ignored the opportunity to have a surveyor of their choice locate the physical boundaries and instead, placed pins and obstructions in the rights-of-way, the trial court determined such actions compelled the plaintiffs to file motions for contempt. Appellants Rice and Watkins also failed to provide a survey within the extended deadline of April 10, 2001, which, according to the trial court, "damaged the plaintiffs due to the unnecessary uncertainty created by [Appellants'] failure to mark the right-of-way."

The trial court found Appellants Rice and Watkins in contempt and entered a judgment in the sum of $1,500 for the plaintiffs' reasonable attorney's fees. Regarding the previous $750 judgment against them, the trial court agreed that, absent a finding of contempt, it would be without authority to require payment of the plaintiffs' attorney's fees. However, the trial court noted that Appellants Rice and Watkins bore the burden of providing evidence that noncompliance was not an act of contumacy and that in the absence of such provision of evidence, the contempt stands. This appeal followed.

Appellants Rice and Watkins raise four points on appeal. The first is that the trial court erred in denying their request to enter a final judgment and in failing to enter a final judgment because the previous orders entered by the trial court did not constitute a final judgment. In their second point, Appellants contend that the trial court erred in failing to locate and legally describe the east/west roadway corridor in issue by use of the survey they filed, which the trial court determined was not in compliance with its judgment, because that survey was prepared in accordance with state statutes and otherwise

followed the directives of the trial court. The third point is that the trial court abused its discretion in entering a judgment against them for $750 in that the trial court did not find them to be in contempt, specifically finding no evidence of bad faith and overruling said motion for contempt except for the award of attorney's fees. In their fourth point, Appellants argue that the trial court erred and abused its discretion by finding them in contempt in its February 12, 2002 docket entries/judgment.

 We have no jurisdiction unless the appeal is from a final judgment. *Patterson v. Harrison*, 46 S.W.3d 580, 582 (Mo.App.2001). A final and appealable judgment is one that disposes of all the issues and all the parties involved. *Turkey Mountain Airport v. Estate of Faler*, 82 S.W.3d 233, 235 (Mo.App.2002). This court has the duty to examine its jurisdiction *sua sponte*. *Patterson*, 46 S.W.3d at 582.

In its "judgment" dated March 24, 2000 (amended April 26, 2000), which the trial court later designated as a final judgment, the trial court indicated that all parties agreed that the property was subject to 40–foot road right-of-way easements as shown on the R. Andrus survey and that "the sole issue remaining in dispute in this case is the actual physical location of the rights-of-way on the parties' property."

 None of the parties appear to disagree that what was described by the trial court as the "sole issue remaining in dispute[,]" regarding the physical location of the rights-of-way, was in fact the issue before the trial court to determine. When the issue before the trial court is a dispute regarding the location on the ground of a boundary between parties' property and the trial court is asked to "fix an uncertain boundary line[,]" ejectment is the appro-

priate remedy to determine or fix that boundary line. *See Carroz v. Kaminiski,* 467 S.W.2d 871, 872 (Mo.banc 1971); *see also Bover v. Long,* 676 S.W.2d 893, 896 (Mo.App.1984). If title to real estate is at issue, rather than simply the location on the ground of a boundary, a suit for quiet title is the appropriate remedy, instead of ejectment. *See Moore v. Beck,* 664 S.W.2d 15, 18 (Mo.App.1984).

In the case at bar, no party filed a claim based on a theory of ejectment. However, under Rule 55.33, when issues not raised by the pleadings are tried expressly or by implication, such issues "shall be treated in all respects as if they had been raised in the pleadings." Rule 55.33(b); *see also Henderson v. Smith,* 643 S.W.2d 882, 885 (Mo.App.1982). It could be argued here that the pleadings were amended by implication to include a claim of ejectment. Perhaps the better practice though, is shown in cases where it has been determined that the trial court's judgment decreed title rather than addressed the issue of the location on the ground of the boundary, and the judgment has been reversed and the cause remanded to allow a party to request leave to file an amended petition seeking the appropriate relief of ejectment, which is also allowed under Rule 55.33(b). *See Carroz,* 467 S.W.2d at 873; *see also* Rule 55.33(b).

■ Here, our difficulty with the judgment is not that the trial court decreed title rather than addressed the ejectment issue, but that the judgment is not a final and appealable because the judgment did not resolve all issues before the trial court; thus, there is no judgment to reverse. Cases that discuss the necessary elements of the judgment, and the adequacy of descriptions used in such a judgment, are more instructive to our analysis.

■ In a suit that involves the establishment or privileges associated with a right-of-way, the location of which is in dispute, the right-of-way should be definitely described in the judgment to the extent that it may be readily located. *Helgeson v. Ochs,* 957 S.W.2d 486, 487 (Mo.App.1997). The level of detail and precision required depends on the type of right-of-way involved; a great degree of detail and precision may not be necessary if a road is long-established and well-defined. *Helgeson v. Ochs,* 988 S.W.2d 545, 548 (Mo.App.1999).

Here, the trial court's purported final judgment included a directive for the defendants, including Appellants Rice and Watkins, "to employ a surveyor of their choice ... to actually mark and locate the rights-of-way." The trial court indicated that two iron pins placed by Read marked the centerline of the east/west right-of-way and the southwest corners of the lot possessed by Appellant Watkins and the lot owned by Appellant Rice. In addition, the trial court found that by using the pins noted above and the Corps of Engineers' monument, which designated the starting point for the lot owned by Realmuto, "the actual location of the Northwest boundary corner of the north/south right-of-way in question can be determined."

■ There is no question that the trial court had the authority to order the survey, as a trial court has such authority to enable it to describe with certainty an easement, a roadway, or the location of a boundary. *Peterson v. Medlock,* 884 S.W.2d 679, 684 (Mo.App.1994) (easement); *Trust by Sherman v. Wilson,* 928 S.W.2d 897, 898 (Mo.App.1996) (roadway); *Sassmann v. Kahle,* 18 S.W.3d 1, 2 (Mo.App. 2000) (location of a fence line). However, if a judgment requires external proof, such as a survey, to dispose of a disputed issue in the case, the finality and appealability of that judgment are affected. *Sassmann,* 18

S.W.3d at 2. If that external proof is missing or does not adequately describe the property in question, the judgment is not final and appealable. *Id.; see also Turkey Mountain Airport,* 82 S.W.3d at 235.

That is the situation we have here. The descriptions of the rights-of-way in the purported final judgment do not describe the 40–foot road corridors with sufficient definiteness so that the actual location on the ground of the boundaries may be readily located. Further, the survey that the trial court directed the defendants to file that would have provided the necessary specificity of the actual location of the boundaries of the rights-of-way, was not completed according to the directive; thus, the external proof required was not present.

As the judgment before us is not a final, appealable judgment, we must dismiss the appeal and remand the case to the trial court without reaching the contempt issues raised. Any judgment rendered after remand must describe the rights-of-way with sufficient certainty so that their locations, with the aid of such description, can be readily established. *Turkey Mountain Airport,* 82 S.W.3d at 235. Further, the

judgment must not only describe the rights-of-way with the level of certainty noted above, but the physical location on the ground of the boundaries of the rights-of-way must be marked to the extent that they may be readily located.

Based on the briefs presented to this court, a likely issue on remand is Appellant Rice's contention that only one-half of the road within the east/west right-of-way should lie on his property. At oral argument however, counsel for Appellants indicated that he did not contend that a road had to be placed in any particular fashion within a roadway corridor, only that a road had to lie within that corridor. If the issue does arise, we first note that Appellant Rice provides no support for this contention and we find none. We agree with counsel's statement during oral argument that, provided the road lies within the 40–foot corridor, there is no basis for the contention that only a certain percentage may lie within the 20–foot roadway easement to which each lot is subject.

The appeal is dismissed.

PARRISH, J., and SHRUM, J., concur.

## APPENDIX A